### Sharon *v.* Hill.

*(Circuit Court, D. California. August 5, 1885.)*

[In the matter of the report of the examiner in chancery in relation to proceeding on the examination of witnesses, August 3, 1885.]

1. CRIMINAL JURISDICTION OF UNITED STATES COURTS—PUBLIC BUILDINGS.

A United States court has exclusive jurisdiction of offenses committed in places in California purchased by the United States, with the consent of the state legislature, for the erection of a custom-house and other necessary public buildings, and so used.

2. CONTEMPT—DRAWING DEADLY WEAPON AT EXAMINATION OF WITNESSES BEFORE EXAMINER IN CHANCERY.

Drawing a pistol and threatening the life of counsel during the examination of witnesses before an examiner in chancery, appointed by a circuit court in a suit pending therein, in judge's chambers, in a building on land under the exclusive jurisdiction of the United States, is a contempt of court, and punishable as such, and also an offense against the statutes of the United States, and punishable by indictment or information.

3. SAME—PUNISHMENT AS CONTEMPT.

When no special end in the administration of justice would be accomplished by proceeding summarily on process for contempt, the court may waive such process and leave the United States to proceed to punish the offense under the statute.

4. SAME—COUNSEL CARRYING WEAPONS INTO COURT.

A member of the bar, who appears in court armed with a deadly weapon, is not only guilty of a contempt of court, but also of professional misconduct, and should be suspended or disbarred.

On August 4, 1885, before FIELD, circuit justice, and SAWYER, circuit judge, the examiner in chancery appointed in this case to take the testimony of witnesses, made the following report to the court:

### THE EXAMINER'S REPORT.

In the Circuit Court of the United States, for the Ninth Circuit, and District of California.

### *William Sharon* v. *S. A. Hill.* (No. 3,138.)

*To the Honorable, the Circuit Court of the United States, for the Ninth Circuit, and District of California:*

I, the undersigned, examiner in chancery of said court, conforming to the request of counsel for complainant in the above-entitled cause, do certify:

At a regular session of the examination in the above-entitled cause, on the third day of August, 1885, at my office in the appraisers' building, San Francisco, California, being the time and place to which said examination was regularly adjourned, there were present William M. Stewart, Esq., and Oliver P Evans, Esq., of counsel for complainant; W. B. Tyler, Esq., of counsel for respondent; the respondent *in propria persona;* and R. U. Piper, recalled as a witness on behalf of complainant in rebuttal. During the examination of said Piper, the respondent, who was sitting at the table, engaged in reading a deposition of Susan Elizabeth Smith, made herein, became apparently much excited. Following is a transcript setting forth a portion of the proceedings taken from the notes of the reporter:

*The Respondent.* I won't sign my deposition unless it contains everything that I said about Stewart's family. He don't dare to take me up on it. I won't sign that evidence unless that is put in.

*The Examiner.* Don't talk about it now.

*The Respondent.* It has got to go in.

*The Examiner.* This is no proper time for bringing up any matter of that kind. A witness is under examination.

*The Respondent.* When I see this testimony, I feel like taking that man Stewart out and cowhiding him. I will shoot him yet; that very man sitting there. To think he would put up a woman to come here and deliberately lie about me like that. I will shoot him. They know when I say I will do it, that I will do it. I shall shoot him as sure as you live; the man that is sitting right there; and I shall have that woman, Mrs. Smith, arrested for this, and make her prove it.

*The Examiner.* Those are not matters which should be brought up now. Don't talk in this way when a witness is under examination.

*The Respondent.* I say no jury will convict me for shooting a man that will bring a woman here to tell such things on me. They have never dared, when they put me on the stand, to ask me a question against my character yet,—never dared. If they have got so much against it, why didn't they dare ask me some questions when I was on the stand?

*The Examiner.* Mr. Tyler, can you put a stop to this interruption?

*The Respondent.* Mrs. Smith said nothing here about my being in a weak condition in Dr. Murphy's office,—that has been put in the testimony,—and that I wanted her to play nurse to me. She was a nurse to me, and I paid her for it.

*The Examiner.* Mr. Tyler, can you put a stop to this? I find that I cannot, and unless you can, I shall have to adjourn the examination and bring this matter to the attention of the court. This thing has gone altogether too far already, and unless it can be stopped here I certainly shall adjourn the examination.

*Mr. Tyler.* Let us get through this afternoon, anyway.

*The Respondent.* I know the woman he is living with, and he brought his wife out here to cover it up. I will expose the whole thing; about the child and all.

*The Examiner.* Will you remain quiet until this examination is completed?

*The Respondent.* I don't know whether I will remain quiet without I get that man's life. I get so worked up when I read this testimony of Mrs. Smith.

*The Examiner.* Let me take that testimony until after the examination is over.

*The Respondent.* I expect you had better.

*The Examiner.* You may finish reading Mrs. Smith's testimony after the close of the session. I hope, now, I shall not be compelled to bring your misbehavior to the attention of the court; for if I should do so, the court will surely punish you for contempt.

*The Respondent.* That would be nothing unusual if Stewart asked it.

*The Examiner.* I shall ask it in this instance, because my duty compels me to do so. You persist in interrupting the proceedings, and it is impossible for the examination to go on. If you will wait until we get through with this examination, if you have anything to say, then it will be a more appropriate time to say it.

*The Respondent.* I can hit a four-bit piece nine times out of ten.

*The Examiner.* If you interrupt the proceedings any further, I shall adjourn the examination and call the attention of the court to this matter, and it won't be my fault if the court does not take such measures as will put a stop to such interruptions. I have at all times been disposed to be as tolerant and lenient with you as possible, but toleration should have a limit, and the limit has been reached. Early in the proceedings the court suggested that I ought to be very lenient with you, and, in conformity to that suggestion, as well as from my own inclination, I have treated you with the greatest consideration and forbearance all through.

*The Respondent.* That is enough; you needn't say anything more.

*The Examiner.* But I propose to say something more.

*The Respondent.* All right; then I'll talk.

*The Examiner.* Since the commencement of the examination in this case, your offensive conduct has frequently disturbed the orderly course of the proceedings, and I have tried in every way which my imagination could suggest to check you,—by considerate treatment, by ignoring your misbehavior, by courteous protest and persuasion, by rebuke, by appeals to your counsel, by threatening to report your conduct to the court. But, instead of abating, the evil is constantly growing worse. Now this thing must stop.

The respondent ceased speaking at this point, and the examination proceeded. In addition to the above-quoted remarks of respondent, she made further statements defamatory of the character of people not connected with the case, which remarks are deemed not necessary to be repeated in this report. The examination of the witness Piper having been concluded, Victor Craig was recalled as a witness on behalf of the complainant in rebuttal. Pending his examination, the respondent drew a pistol from her satchel and held it in her right hand, the hand resting for a moment upon the table, with the weapon pointed in the direction of Judge EVANS, the hand and weapon being then dropped to her lap, beneath the table. At this time Mr. Stewart had left the room. Judge EVANS, noticing the action of the respondent, said:

"What do you want? Do you want to shoot anybody?"

*The Respondent.* I am not going to shoot you just now, unless you would like to be shot, and think you deserve it.

*Mr. Evans.* No; I would rather not be.

*The Examiner.* Unless you will give that pistol into my custody, I shall adjourn the examination and report this matter to the court.

*The Respondent.* I am not going to shoot anybody.  I will give it into your custody.

*The Examiner.* I will adjourn this examination until to-morrow.  Won't you give me that pistol?

The respondent complied with the request, and allowed the examiner to take her pistol.

*Mr. Evans.* We don't desire to proceed any further, under the circumstances.  We ask that this matter be reported to the court.

*The Respondent.* You shall not slander me.  These men know they need it, and I told the supreme court they knew they needed it.

*Mr. Evans.* I shall decline to proceed any further.

The examination was adjourned by the examiner to August 4, 1885, at 10 o'clock A. M.

It may be proper to add that upon previous occasions respondent has brought to the examiner's room, during the examination, a pistol, and has sat for some length of time holding it in her hand, to the knowledge of all persons present at the time.

Respectfully submitted,

S. C. HOUGHTON, Examiner, etc.

On August 5th the report was considered by the court, Mr. Justice FIELD, and SAWYER, circuit judge, being present.

In Equity.

*William M. Stewart* and *Oliver P. Evans,* for complainant.

*W. B. Tyler,* for defendant.

FIELD, Justice, (*orally.*)  In the case of *William Sharon* v. *Sarah Althea Hill,* the examiner in chancery appointed to take the testimony has reported to the court that very disorderly proceedings took place before him on the third instant; that at that day, in his room, when counsel of the parties and the defendant were present, and during the examination of a witness by the name of Piper, the defendant became very much excited, and threatened to take the life of one of the counsel, and that, subsequently, she drew a pistol, and declared her intention to carry her threat into effect.  It appears, also, from the report of the examiner, that on repeated occasions the defendant has attended before him, during the examination of witnesses, armed with a pistol.  Such conduct is an offense against the laws of the United States, punishable by fine and imprisonment.  It interferes with the due order of proceedings in the administration of justice, and is well calculated to bring them into contempt.  I, myself, have not heretofore sat in this case, and do not expect to participate in its decision; I intend in a few days to leave for the east, but I have been consulted by my associate, and have been requested to take part in this side proceeding, for it is of the utmost importance, for the due administration of justice, that such misbehavior as the examiner reports should be stopped, and measures be taken which will prevent its recurrence.  My associate will comment upon the laws of congress which make the act committed by defendant a misdemeanor, punishable by fine and imprisonment.  The marshal will be directed to disarm the defendant whenever she comes before the examiner, or into court, in any future proceedings, and to appoint an officer

to keep strict surveillance over her, in order that she may not carry out her threatened purpose.    This order will be entered:

Whereas, it appears from the report to this court of the examiner in chancery, in this case appointed to take the depositions of witnesses that on the third day of August, instant, at his office, counsel of the parties appeared, namely: William M. Stewart, Esquire, and Oliver P. Evans, Esquire, for the complainant, and W. B. Tyler, Esquire, for the defendant, and the defendant in person, and that during the examination before said examiner of a witness named Piper, the defendant became excited and threatened the life of one of the counsel of the complainant present, and exhibited a pistol with a declared purpose to carry such threat into effect, thereby obstructing the order of the proceedings and endeavoring to bring the same into contempt:

And whereas, it further appears, that said defendant habitually attends before the said examiner carrying a pistol: it is ordered, that the marshal of this court take all such measures as may be necessary to disarm said defendant, and keep her disarmed and under strict surveillance while she is attending the examination of witnesses before said examiner, and whenever attending in court, and that a deputy be detailed for that purpose.

Mr. Clerk, enter the order.

Mr. Justice SAWYER will explain for the benefit of counsel the statutes of congress.    It is to be observed here that the block embracing this building and the custom-house is under the exclusive jurisdiction of the United States.    Every offense committed within it is an offense against the United States, and here the state has no jurisdiction whatever.    This fact seems to have been forgotten by parties.


SAWYER, J., (orally.)   The occasion, I think, calls for some observation on my part in regard to this matter.    The taking of testimony in this case has been going on for a long time.    During the progress of the case many things had occurred that were exceedingly unpleasant, but through the considerate and commendable forbearance of the examiner and of counsel, a point had been reached where the testimony was nearly completed, and it was hoped would soon be closed without further interruption, when the incident occurred which imperatively required this report from the examiner.    The occurrence is one of great gravity.    The lives of officers of the court, in attendance before a branch of the court, in the performance of their duties as counsel, being in danger, the examiner justly felt that he could no longer refrain from reporting the action of the defendant without a violation of official duty.    In connection with this matter, I shall call attention to some facts and some points of law that may not be within the knowledge of the party implicated, and may even have escaped the notice of counsel, in order that such offenses against the laws of the United States may not in future be ignorantly committed.    Of course, we are all familiar with the maxim that everybody is supposed to know the law, yet, in point of fact, it often occurs that many do not.    I shall therefore proceed to state some provisions of the statutes in relation to transactions of the kind reported that may not have attracted notice, in order to guard against any such future mis-

conduct as will lead to serious difficulties and necessitate severe punishment. As was remarked by the presiding justice, this building is under the exclusive jurisdiction of the United States. The block on which it stands has been purchased by the United States from the state of California, by the consent of the legislature, for the erection of the public buildings upon it; and it is by the constitution thus placed under the exclusive jurisdiction of the United States. All offenses committed in this edifice, or upon the block of land upon which it stands, are offenses against the United States, punishable exclusively by the national courts. This point was authoritatively decided at the last term of the supreme court of the United States, in the case of *Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525; S. C. 5 Sup. Ct. Rep. 995. Every offense recognized by law, from the highest down to a simple assault, committed in this building, or on this block, is an offense against the United States, and punishable as such by the courts of the United States. The United States statutes have not defined specifically, in terms, every offense, but they have defined a number of the graver class, and then made a general provision covering all others. Section 5391, Rev. St., provides as follows:

"If any offense be committed in any place which has been, or may hereafter be, *ceded to and under the jurisdiction of the United States,* which offense is not prohibited, or the punishment thereof is not specially provided for, by any law of the United States, such offense shall be liable to and receive the same punishment as the laws of the state in which such place is situated, now in force, provide for the like offense, when committed within the jurisdiction of such state."

Thus an act not specifically made an offense by the statutes of the United States, but which is an offense under the laws of the state wherein performed, is made, by this general provision, also an offense under the laws of the United States, and punishable by the same penalties which are inflicted under the laws of the state. Under the provisions referred to, the acts, as reported by the examiner in this case, constitute at least two, if not three, offenses against the United States,—perhaps four. Section 5399 (omitting that portion relating to other matters) provides as follows:

"Every person who, by threats, endeavors to influence, intimidate, or impede any officer in any court of the United States in the discharge of his duty, or by threats or force obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both."

In this matter, as reported by the examiner, there was an obstruction of an officer,—the examiner in chancery of this court,—and of counselors of the court, who are officers of the court, in the discharge of their respective duties, and also an impeding of the due administration of justice. The obstruction resulted in an adjournment of

the examination, as neither counsel nor examiner were willing to proceed in face of the menace offered to counsel, accompanied by the exhibition of a pistol, by the defendant in the suit. Again, the Penal Code of this state makes the following provision; and the general statute which I have read, making all offenses in the state which are not specifically defined in the statute of the United States offenses against the United States, and punishable by the same penalty as in the state, makes this an offense against the United States. Section 417, Penal Code Cal., provides that—

"Every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry, and threatening manner, or who, in any manner, unlawfully uses the same in any fight or quarrel, is guilty of a misdemeanor."

Another section provides that the punishment for misdemeanors, not otherwise specially provided for, shall be by "imprisonment in the county jail not exceeding six months, or by a fine not exceeding five hundred dollars, or both." Pol. Code, § 19. Again, section 467 of the Penal Code of California provides as follows: "Every person having upon him any deadly weapon, with intent to assault another, is guilty of a misdemeanor." And there are various other cognate offenses, all of which are offenses against the United States, by adoption in the section which I have already read. As before remarked, every offense which is committed in this building, or on this block, from the highest down to an assault, is an offense against the United States, exclusively punishable by the courts of the United States; and attention is called to this, so that parties may not in future unwittingly commit any of these offenses, and subject themselves to the penalties inflicted by the law.

This report of the examiner having been made, it imperatively calls for some action by the court. It cannot be passed unnoticed. It is proper to observe that counsel for the opposing party have exhibited great moderation, and have only sought the protection of their lives. They have not asked the court to proceed to punish defendant for the contempt committed. They only ask, and it is certainly a very moderate and reasonable request, that they shall not be required to practice their profession in the circuit court of the United States at the muzzle of their opponent's pistols. The court, of its own motion, the matter having been brought to its attention, might well proceed upon the case as reported, as a gross contempt of court. It is unquestionably a contempt. It is a contempt committed before an officer lawfully taking testimony in this case, the proceeding being a part of the trial of the case, in the chambers of the judge adjoining the court-room; the examiner being an adjunct of the court—a part of the court itself. This act reported is undoubtedly as distinctly and clearly a contempt of court as though committed in the presence of the judge, in the court-room, while in the act of trying a case, either with or without a jury. This point is well discussed by Judge

HAMMOND, of the district of Tennessee, in *U. S.* v. *Anonymous*, a case of much milder type of contempt, 21 FED. REP. 761.

But these same acts, which constitute a contempt in this case, also constitute several offenses under the laws of the United States, punishable in the ordinary course of criminal proceedings. There are but two objects of proceeding by process for contempt. One is to punish a contempt already committed, as a past offense, where, perhaps, the criminal statutes do not cover the case, or, in some cases, where they do, but where the exigencies of the occasion require a more summary and prompt remedy; and the other object is to enforce the performance of some duty or act which is still in the power of the party to perform. So far as future action is concerned, we have endeavored to provide for the safety of counsel by the order which we have just made, requiring the marshal to see that the defendant does not enter the room of the examiner, or the chambers of the judge, or the court-room, while armed; and also by calling attention to the liability to criminal punishment for other similar acts that may be performed in the future. As to the past offense, we might well proceed to punish the acts reported as a gross contempt of court. But where the same acts constitute both a contempt of court, which could be punished as such,—that is to say, as a past contempt,—and at the same time constitute an offense against the laws of the country which may be punished on indictment or information, though sometimes it is necessary to promptly vindicate the court by means of the more summary process for contempt, as a general rule, it is desirable to proceed criminally, if, in the ordinary exercise of the criminal jurisdiction of the court, it can just as well be done. In such cases, where there is no special end in the administration of justice to be attained by a proceeding for contempt, it is deemed better to adopt the more deliberate mode of procedure applicable to the enforcement of the criminal laws of the country. We have not been asked to proceed by process of contempt, and as there appears to be no special call for hasty action, we deem it advisable, under the circumstances of this case, to proceed in the more deliberate, careful, and less harsh proceeding, under the charge of the government, than to proceed by process for contempt. We shall therefore waive the process for contempt; and the attention of the United States attorney having now here been called to the breach of the laws, as reported by the examiner, we shall leave the matter to such course of proceeding as he may deem it his duty to take, to enforce the criminal laws of the country.

----

Immediately after the announcement of the decision, the following colloquy occurred, illustrating the views of the court as to the character of the professional conduct of members of the bar who enter the temple of justice armed. It is deemed of sufficient impor-

tance to the public and the bar to justify appending it, as a note, to the decision:

*Mr. W. B. Tyler.* If the court please: Of course I deprecate any such acts as those in the court-room, or in the examiner's office, as much as anybody; but I would suggest that there be an addition made to that order of the court, and that is that nobody be allowed to enter that room armed during the progress of this examination. I think it is necessary, I think it is proper, and there is no more reason—

*Justice Field.* We have no evidence that anybody has gone into the room armed. We have only made a rule to apply to what is brought to our knowledge.

*Mr. Tyler.* As his honor, Judge SAWYER, remarked, several very unpleasant things have occurred in there that perhaps your honor has no more evidence of—

*Justice Field.* I know nothing of them, of course.

*Judge Sawyer.* We considered that matter to which you refer, Mr. Tyler, and we had no evidence of anything of that kind. Nobody but counsel could be guilty of any such breach of propriety; and, after calling attention to the statutes of the United States, and to the fact that carrying arms for an unlawful purpose is an offense against the statutes, we hardly expect that any member of the bar of this court will presume to enter the examiner's room or the court-room armed. We cannot presume that members of the bar will be guilty of any such professional misconduct.

*Justice Field.* I may add here, further, that any lawyer who so far forgets his profession as to come into a court of justice armed ought to be disbarred from practice.

*Mr. Tyler.* Witnesses are sometimes armed.

*Judge Sawyer.* Witnesses, it is true, may come into court armed; but, with the admonition we have given, and as there has been no evidence that witnesses have come before the examiner armed, we think it hardly advisable to anticipate any difficulty in that direction. We apprehend that witnesses will be likely hereafter to conduct themselves with propriety.

*Mr. Tyler.* I would say to his honor, Judge FIELD, that, although I thoroughly concede everything he says, in certain instances, yet where a lawyer has information that a witness will come armed, he will very likely do as I myself have done,—come armed, to protect himself.

*Justice Field.* Then you would act very improperly. You should report the fact to the court and let the man carrying arms be arrested.

*Judge Sawyer.* When you have any such information, you should have the party put under bonds, or apply to the court in advance for protection.

*Justice Field.* Any man, counsel or witness, who comes into a court of justice armed, ought to be punished, and if he is a member of the bar, he ought to be suspended or removed permanently. That is the doctrine that ought to be inculcated from the bench everywhere. So far as I have the power, I will enforce it.

*Mr. Tyler.* So should I enforce it.

*Justice Field.* The reason that you give for carrying arms in court is not a good reason.

*Mr. Tyler.* Where witnesses do come armed—

*Justice Field.* Then report the fact to the court; that is the proper way.

*Mr. Tyler.* That will not stop a bullet.

*Judge Sawyer.* Then arrest the parties in advance, and put them under bonds, or apply to the court to have them examined and disarmed before permitting them to enter the court. The laws are very severe.

*Mr. Tyler.* The laws are very severe, but it is harder on the man that gets the bullet.

*Justice Field.* I don't mean to say that there may not be times in the history of a country, in certain communities, when everybody is armed. That was the case in the early days of California, when people traveled armed; but at this time, when law is supposed to be supreme, when all good men are supposed to obey it, and where counselors are sworn to obey the law and to see it properly administered, the carrying of arms into a court cannot for a moment be tolerated.

*Mr. Tyler.* Your honor will excuse me one minute, as this is a personal matter, and a little personal reflection on myself, in view of another proceeding which has taken place—

*Justice Field.* I know nothing of any other proceeding—

*Mr. Tyler,* (interrupting.) But as you have expressed your opinion that a lawyer who, under any circumstances, should come into a court of justice armed should be disbarred, and that was my exact case, I certainly have a right to explain that circumstance. During the trial of a case in the superior court—

*Justice Field.* We do not care about hearing of that. We cannot go into that matter at all.

*Mr. Tyler.* Don't you consider that to make that assertion as an absolute assertion, when it applies directly to a member of the bar of this court, and has nothing to do with this matter, that the member may answer? You have made that assertion, and I went into a court-room armed with a pistol, for the purpose of preserving, as I supposed, my father's life and my own; and now I make the explanation.

*Justice Field.* It is not worth while to pass any words with the court. We do not take our rules of procedure from the state courts, and if any lawlessness is permitted there, we should not be governed by that fact. I trust I never shall be called to preside over a federal court where any lawyer will presume to come into it armed, and if he does, I shall exercise such authority as is vested in me to prevent it. Whatever may have been done in a state court, I know nothing about.