[Crim. No. 11008. First Dist., Div. One. Jan. 15, 1973.]

In re ARTHUR EDWARD CARVALLO on Habeas Corpus.

## COUNSEL

James C. Hooley, Public Defender, and E. Craig Goldman, Assistant Public Defender, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Respondent.

## OPINION

**ELKINGTON, J.**—Arthur E. Carvallo was found guilty of contempt and sentenced to five days in the county jail therefor, by the Alameda County Superior Court. By a petition for writ of habeas corpus he seeks to set aside the court's action as beyond its jurisdiction. We issued an order to show cause why the relief sought should not be granted.

We state the factual background according to the rule that the evidence must be taken most strongly in support of the contempt order. (See *In re Gutierrez*, 122 Cal.App.2d 661, 664 [265 P.2d 16].)

Carvallo was charged in the superior court with burglary (Pen. Code, § 459), automobile theft (Veh. Code, § 10851), and receiving stolen property (Pen. Code, § 496). While attending the courtroom one morning for the purpose of setting a trial date he carried a wooden cane approximately four feet long. He did not use the cane to "assist" or "support" himself; he seemed to be carrying it "for ornamental purposes." "[W]hen he was talking with the Public Defender at the midpoint in the room he used the cane to point to other people, and [the courtroom bailiff] felt it was an offensive gesture. [He] thought that that gesture warranted asking Mr. Carvallo not to carry the cane back in the courtroom."

During a court recess the bailiff followed Carvallo to the outer corridor. In accordance with a practice to "be cautious of the safety of all persons entering the courtroom" he "confronted Mr. Carvallo and asked him not to bring the cane into the courtroom again," making that "request for security purposes." Carvallo gave some "verbal resistance" and said "he had every intention of returning to the courtroom with the cane." On request Carvallo produced an "ID" card at which time a "bulge" was observed in his clothing. Asked to produce the object which was creating the bulge Carvallo extracted "a knife that was folded up" and which was in a little "black case" strapped to his waist. We have seen the knife. It has a single blade which "folds" into the handle. The blade measures 3¾ inches, while the overall length of the knife when closed is five inches. It might reasonably be described as an outsized pocket knife. It is not a so-called switchblade knife (see Pen. Code, § 653k), nor is it a dirk or dagger as proscribed by Penal Code section 12020 (see *People* v. *Shah,* 91 Cal.App. 2d 716, 720 [205 P.2d 1081]; *People* v. *Ruiz,* 88 Cal.App. 502, 504 [263 P. 836]). And although the blade is pointed, it is exceedingly dull.

The bailiff reported the incident to the court. A hearing was held during the course of which Carvallo was asked what he used the knife for and why he brought it with him to court. He replied, "I fish quite a bit. Occasionally I go hunting and I use it when I work, cut ropes. I carve a little bit. I use it for carving. . . . I had just got off work [at 8:30 a.m.]. I worked last night and I take it to work with me. We use cardboard boxes. Sometimes you have to cut the cardboard boxes, you have to cut ropes. I use the knife for working."

The decision which is the subject of the instant proceedings is reflected by the court's minutes as follows:

██ "The court finds the defendant, during main session of court, had in his possession and control a knife which was a menace and a threat to

safety of others in the courtroom. The court finds the defendant in contempt and the defendant is sentenced to five (5) days in the county jail."

The scope of review upon an application for a writ of habeas corpus arising out of a contempt adjudication was recently restated in *In re Karpf,* 10 Cal.App.3d 355, 364 [88 Cal.Rptr. 895], as—"[W]hether the act or omission charged against the alleged contemner confers jurisdiction to adjudicate the contempt and whether the jurisdictional act or omission is supported by the evidence."

Code of Civil Procedure, section 1209, subdivisions 4 and 8, provide that an abuse of, or unlawful interference with, the proceedings of a court is contemptuous.

This statutory rule has been amplified by judicial decisions of this state. Citing such authority, it was said in *Mowrer* v. *Superior Court,* 3 Cal.App. 3d 223, 230 [83 Cal.Rptr. 125], that, "A court has inherent power to exercise reasonable control over all proceedings connected with the litigation before it . . . in order 'to insure the orderly administration of justice' . . . and maintain 'the dignity and authority of the court' . . . , and to summarily punish for acts committed in the immediate view and presence of the court when they impede, embarrass or obstruct it in the discharge of its duties."

Certainly one of the highest judicial duties is reasonably to insure the safety and security of the court and its officers, litigants and attending public. This duty is especially applicable to danger of violence from one charged with crime before the court. To cope with such hazards the Legislature has enacted Penal Code section 1542, which states: "When a person charged with a felony is supposed by the magistrate before whom he is brought to have on his person a dangerous weapon, or anything which may be used as evidence of the commission of the offense, the magistrate may direct him to be searched in his presence, and the weapon or other thing to be retained, subject to his order, or to the order of the court in which the defendant may be tried." Although this statute refers to "the magistrate" it obviously gives expression to the power of courts generally to protect themselves against probable occasions of violence.

We observe further that Mr. Justice Field (*Sharon* v. *Hill,* 24 F. 726, 734) has stated: "Any man, counsel or witness, who comes into a court of justice armed, ought to be punished, . . . That is the doctrine that ought to be inculcated from the bench everywhere." Similarly, in *Lynn* v. *State,* 38 Okla. Crim. 313 [260 P. 1069], where a criminal defendant accidently dropped a loaded firearm from his person in a courtroom, it was held that a contempt was committed.

Yet we are unable to conclude that from the evidence before the superior court in the instant proceeding, a *case of contempt* was reasonably made out. Although any knife, depending upon the possessor's intent or the manner in which it is used, may be a dangerous or deadly weapon (*People* v. *Claborn,* 224 Cal.App.2d 38, 42 [36 Cal.Rptr. 132]), here the knife was folded and in a "case," its possession was explained, and no reasonable inference of an intent to improperly use it in the courtroom may be drawn.

We do not hold that the removal of the knife from Carvallo's possession, at least while he was in the courtroom, was improper, nor do we say that the court could not properly have made an order banning such instruments in the courtroom, the knowledge and violation of which would be contemptuous. We simply hold that under the factual circumstances of this case *contempt* was not established. And we note that Carvallo's conduct with the four-foot cane was no part of the basis of the contempt order.

The writ of habeas corpus will issue; the superior court will set aside the subject contempt order.

Molinari, P. J., and Weinberger, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.