[Crim. No. 11162. First Dist., Div. Four. Feb. 15, 1973.]

İn re CORA JASPER on Habeas Corpus.

## COUNSEL

James C. Hooley, Public Defender, James R. Jenner and Gary N. Wood, Assistant Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, and Derald E. Granberg and John C. Davis, Deputy Attorneys General, for Respondent.

## OPINION

**GOOD, J.**[*]—Petitioner attended a master criminal calendar of the Alameda County Superior Court at which her son was appearing as a defendant. She was accompanied by another 18-year-old son. In an elevator that primarily services the various courtrooms in the courthouse, a woman noticed a knife projecting from the youth's hip pocket and admonished him that he would be inviting trouble if he took the knife into a courtroom. He thereupon handed it to his mother, who put it into her purse. They proceeded into the courtroom.

A judge, who happened to be in the elevator, observed the incident and reported it to a bailiff who in turn reported it to the bailiff of the calendar session. Petitioner was asked to step into the entrance hallway where the bailiffs requested permission to search her purse. She readily consented. The knife was extracted and taken into chambers where the judge was apprised of what had happened. He convened court, had the bailiff sworn and the foregoing incidents put on record. Petitioner was identified and the judge informed her of the seriousness of the situation, appointed the public defender to represent her at a proposed summary contempt proceeding and ordered her not to leave the courtroom. After the public defender had opportunity to confer with petitioner and her 18-year-old son as well as the bailiffs, a summary contempt proceeding was heard. The knife was marked in evidence. It was described by the bailiff as being an old steak knife with a plastic handle and a blade 4 to 5 inches long. The order of contempt eventually signed by the judge specifically describes it as having a "handle: 4¾ inches in length and blade: 5½ inches in length."

Petitioner testified in effect that she had no criminal record and no previous court experience of any kind. She said her son had been using the knife as a screwdriver while working on his car; that they left to attend the criminal calendar in a hurry; that the son had inadvertently put the knife in his back pocket; that when her son was admonished in the elevator about the knife they thought there was no other place to put it but in her purse. The record is devoid of evidence of any other untoward conduct or evil intent on the part of either petitioner or her young son.

The petitioner was found to be in contempt and a five-day sentence

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

imposed. At her attorney's request, the judge stayed execution of the sentence for 30 days. The writ of habeas corpus filed herein poses the question:

*Is a Person Who, Without Evil Intent, Carries a Knife Concealed in a Purse (Or Otherwise Concealed) Guilty of a Direct Contempt?*

There is a paucity of case law on the question and, except for *In re Carvallo* (1973) 29 Cal.App.3d 983 [105 Cal.Rptr. 925] recently decided by our learned colleagues in division one of this court, we find no California cases bearing on the precise point. As noted in *Carvallo,* there is a discussion by Justice Field in the historic case of *Sharon* v. *Hill* (9th Cir. 1885) 24 F. 726, wherein he succinctly states the principle that any counsel or witness who arms himself before coming into a court of justice is surely in contempt. The considerations therein discussed should apply to litigants or mere spectators. But it appears to us that the concept of arming oneself requires that a weapon or instrument capable of use as a weapon is being carried for offensive or defensive purposes and, therefore, involves such purpose or intent.

Ordinarily, a specific wrongful intent is not an essential element in contempt proceedings (17 C.J.S. 19) and a disavowal of intentional disrespect or wrongful intent is not a defense therein. (*Chula* v. *Superior Court* (1952) 109 Cal.App.2d 24, 39 [240 P.2d 398].) However, an examination of other cases shows that there exists a class of contempts, where an act is of only doubtful propriety, in which intent does go to the gravamen of the offense and good faith or lack of it on the part of the contemner may determine whether a contempt occurred. (17 C.J.S. 20; *In re Burns* (1958) 161 Cal.App.2d 137, 141, 143 [326 P.2d 617]; *May Hosiery Mills* v. *United States District Court* (9th Cir. 1933) 64 F.2d 450, 453.)

If arming oneself implies an offensive or defensive purpose, it follows that some instruments or weapons (pistols, switch blades, typical dirks or daggers, billies, et cetera) may speak for themselves and strongly infer an offensive or defensive purpose. The possession or display of such weapons by any unauthorized person in court, even if the display were accidental, would inevitably create sufficient consternation to disrupt or interfere with judicial proceedings within the meaning of Code of Civil Procedure section 1209, subdivision 8. We note that the Oklahoma Court of Criminal Appeals had no hesitancy in sustaining a 90-day sentence in a summary criminal contempt proceeding where a defendant during his trial seemingly by

accident allowed a six-shooter to drop from his pants waistband to the floor of the courtroom. (*Lynn* v. *State* (1927) 38 Okla. Crim. 313 [260 P. 1069].)

*People* v. *Grubb* (1965) 63 Cal.2d 614, 620-621 [47 Cal.Rptr. 772, 408 P.2d 100] recognizes a distinction between weapons that are generally considered "common to the criminal's arsenal . . . [and] . . . ordinarily used for criminal and unlawful purposes" and "the sometimes-useful object" that may fall within the proscriptions of Penal Code section 12020 when the attendant circumstances indicate "that the possessor would use the object for a dangerous, not harmless, purpose" or "demonstrate an immediate atmosphere of danger." The case also notes that, where the latter category of instrument is involved, an accused "may be able to demonstrate an innocent usage . . . but the burden falls upon him to do so." (*People* v. *Grubb, supra,* 63 Cal.2d 614 at p. 621.) The steak knife in question here, which we have examined, falls into this latter category.

*In re Carvallo, supra,* discusses the gravity of the judicial duty to insure the safety and security of a courtroom. If the opinion therein could be construed to require the prosecution to prove a guilty intent in the mind of the possessor of every dangerous weapon brought into a courtroom before a contempt could be found, a judge's power to prevent violence or threats of violence in a courtroom would be unduly circumscribed. We do not believe it bears that construction. It does, however, stand for the proposition that possession in a courtroom of an instrument that may or may not be a dangerous weapon, depending on the possessor's intent or the manner in which it is used, does not constitute contempt in the absence of a reasonable inference of an intent to improperly use it in the courtroom.

In the case before us, the instrument was manufactured for an innocent utilitarian purpose and not especially adapted for offensive purposes. The circumstances of its possession did not create an immediate atmosphere of danger. Petitioner did not display it in the courtroom either intentionally or by accident. An innocent account of its possession was made by petitioner that was not contradicted by any evidence, direct or indirect. In the absence of posted rules banning it or like instruments, the admonition in the elevator against her son bringing it into the courtroom openly displayed in his hip pocket did not make it clear to petitioner that she would be considered "armed" when she deposited the instrument in her purse or that she would otherwise disrupt the court's proceedings. The circumstances disclose an innocent error of human judgment, and there is no reasonable inference of an intent to improperly use the knife in the courtroom.

The writ of habeas corpus is granted, and the superior court is directed to set aside the subject contempt order.

Devine, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.