[No. F020118. Fifth Dist. Feb. 9, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS GONZALES, Defendant and Appellant.

**COUNSEL**

Matthew H. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Maureen A. Daly and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HARRIS, J.—**

### STATEMENT OF THE CASE

On May 4, 1993, an information was filed in Kern County Superior Court charging appellant Luis Gonzales with two counts of check forgery, in

violation of Penal Code section 470,[1] and one count of possessing a dirk or dagger, in violation of section 12020, subdivision (a), to which he entered a plea of not guilty.

Trial proceedings commenced June 30, 1993, with a number of *in limine* motions being heard. In particular, the trial judge denied the defense motion to exclude evidence of appellant's alleged possession of the knife.

Following the presentation of evidence, appellant moved the court for a judgment of acquittal as to the section 12020, subdivision (a) count based on his belief that there was insufficient evidence that the knife he possessed was a dirk or dagger within the meaning of the law. He claimed, "[i]t was substantially limited in its stabbing effectiveness or its utility as a dangerous and deadly weapon as a dirk or dagger in that it was possessed at work as a utility knife possessed for innocent purposes." The prosecution insisted that "[t]here is no requirement of a burden on the People to show it was possessed with intent or with an innocent purpose." Relying on this court's opinion in *People* v. *Barrios* (1992) 7 Cal.App.4th 501 [8 Cal.Rptr.2d 666], the trial judge found that sufficient evidence existed to support a conviction on the charge based on the physical characteristics of the knife itself, and, accordingly, denied the motion.

Appellant then asked the court to instruct the jury in the language of CALJIC No. 12.42, which provides: "In determining if the instrument or object in this case was a weapon of the kind within the law as stated, you may consider the circumstances attending any possession of the instrument or object by the defendant, such as the time and place of its possession; the destination of the possessor; any alteration of the object from its standard form; and evidence, if any, indicating its intended use by the possessor for a dangerous rather than a harmless purpose."

Following brief argument, the trial judge examined the knife and concluded its characteristics were such that the jury would not be allowed to consider the circumstances surrounding its possession—including appellant's intended use of the weapon. The court noted that the knife had a two-and-one-half-inch handle with a protruding finger guard and a three-inch long blade sharpened on one side that ended with a sharp tip.

The judge instructed the jury on this count using the following modified version of CALJIC No. 12.41:

"Defendant is accused in Count 3 of the information of having violated Section 12020 of the Penal Code, a crime. Every person who carries

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

concealed upon his person any dirk or dagger is guilty of violation of Section 12020 . . . , a crime.

"The words dirk and dagger are used synonymously and both refer to any straight weapon designed and fitted primarily for stabbing.

"In order for a weapon to be a dirk or dagger [it] must have a rigid blade or a blade capable of being locked in an open position with a sharp point, a handguard to [protect] the hand of the user from slipping onto the blade if the weapon is used for stabbing, a handle, and a blade of a length which is capable of inflicting death.

"You are to determine whether or not the weapon introduced in evidence in this case is a dirk or dagger within the foregoing definition.

"In order to prove such crime, each of the following elements must be proved: One, a person carried a dirk or dagger;

"Two, said weapon was substantially concealed upon his person, and;

"Three, the person knew he was carrying such weapon."

After further instruction, the cause was given to the jury.

During deliberations and after viewing the knife, the jury sent the court a note that said, "The jury believes the knife fits the qualifications as a dirk or dagger. Can we consider it to be used as a tool or weapon?" The court discussed the matter with counsel, noted defense counsel's objection and, once again relying on this court's decision in *People* v. *Barrios, supra,* 7 Cal.App.4th 501, responded with the following language: "The jury must focus only on the characteristics of the weapon as a stabbing instrument, not on the mental state of the defendant in possessing the weapon. If the knife has innocent uses and is of substantially limited effectiveness as a stabbing instrument it could not be held to be a dirk or dagger." The jury resumed deliberations and, on July 6, 1993, found appellant guilty on one count of forgery and of possessing a dirk or dagger.

On August 3, 1993, appellant was sentenced to prison. This appeal followed. The sole issue presented for our consideration is whether the trial court committed prejudicial error when it refused to instruct the jurors that they could consider appellant's intent in possessing the weapon when deciding whether he possessed a dirk or dagger within the meaning of section 12020, subdivision (a). We find no error and therefore affirm.

### STATEMENT OF FACTS

The facts pertaining to appellant's forgery conviction are not pertinent to the issue presented on appeal and thus are not set forth. Suffice it to say that

it was at the time of his arrest in connection with that charge that appellant was found to be in possession of the knife in question. Appellant was arrested at his father's automotive repair shop and, when asked, volunteered the knife which was in his back pocket.

At trial, Detective Harp, one of the arresting officers, had some vague recollection of having asked appellant about the knife and that appellant claimed to have used it in his automotive repair work. Detective Harp noted, however, that the knife blade was free of oil and grease at the time it was confiscated. The detective said that only two and one-half inches of the roughly three-inch blade was sharpened. He admitted though that even the sharpened portion was not very sharp. Neither officer had any recollection of Detective Harp telling appellant that he did not have to worry about the knife because it would be considered a tool.

Appellant did not testify. The only defense evidence related to the issue currently before this court came from appellant's fiancée who testified appellant was an auto mechanic and she had frequently seen appellant using the knife around the shop, "kind of like a screwdriver or something," when performing automotive repairs. She would occasionally clean the knife before placing it in appellant's toolbox.

## DISCUSSION

■ "Any person in this state who . . . carries concealed upon his or her person any dirk or dagger, is guilty of a felony, . . ." (§ 12020, subd. (a).) At the time of appellant's trial, the terms "dirk" and "dagger" were not defined by statute but rather by case law.[2] The definition used by the courts provided as follows: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of *any weapon fitted primarily for stabbing*. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)" (*People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836], italics added; accord, *People* v. *Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; *People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374].)

Appellant seeks to enlarge this definition to include consideration of the possessor's intended use of the weapon. We considered and rejected this

[2]The statute has since been modified to define these terms as "a knife or other instrument with or without a handguard that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death." (§ 12020, subd. (c)(24).) This change did not become effective until January 1, 1994. (See Stats. 1993, ch. 1139, § 2.)

very argument in *People* v. *Barrios*, *supra*, 7 Cal.App.4th 501, when such evidence was utilized to attempt to bring an otherwise nonqualifying weapon (a common bread knife with a flexible blade and no sharp edges or sharp point) within the proscriptions of the statute. (7 Cal.App.4th at pp. 505-506.)

Appellant acknowledges this point but insists that *Barrios* and the appellate court cases cited therein were concerned with the use of this evidence only where it would result in *enlarging* the category of weapons covered by the statute. As such, he maintains it has yet to be decided whether this type of evidence can be utilized to *constrict* the class of weapons that can qualify as a dirk or dagger.

Our position remains the same regardless of whether this evidence is used to expand or constrict the class of weapons that can qualify as dirks or daggers under section 12020, subdivision (a). We believe the evidence related to the possessor's intended use of the weapon is simply irrelevant and should not be considered by the trier of fact when deciding whether a given knife qualifies as a dirk or dagger. While *Barrios* did indeed concern the possible expansion of the type of weapons covered by the act, much of its reasoning applies equally well to defeat the argument advanced herein.

As noted in *Barrios*, the terms "dirk" and "dagger" are to be strictly construed. (7 Cal.App.4th at p. 505, citing *People* v. *Bain* (1971) 5 Cal.3d 839, 850 [97 Cal.Rptr. 684, 489 P.2d 564].) Just as we cannot expand the definition of "dirk" or "dagger" to include weapons that do not physically qualify by relying on a possessor's statements of intended use, we cannot restrict the definition to exclude weapons that could reasonably be found to qualify as dirks or daggers but for which a claim has been made that their possession was purely innocent. To hold otherwise would require us to read language into the judicially approved definition that is simply not there. This we decline to do.

The Supreme Court has both approved the definition as written and has consistently decided this type of case based solely on the physical characteristics of the weapon despite the fact that evidence was presented in *Bain* to show the defendant carried the knife for protection. (*People* v. *Bain*, *supra*, 5 Cal.3d at pp. 844, 850-852; *People* v. *Forrest*, *supra*, 67 Cal.2d at pp. 480-481.)

Appellant focuses on the following language from *Forrest* which he claims supports his position: "[W]hen a knife which, like other pocket-knives, has many possible uses, some of which are clearly innocent and utilitarian, also has a characteristic which in many situations will substantially limit the effectiveness of its use as a stabbing instrument, it cannot be

held to be a weapon primarily designed for stabbing, and thus is not a dagger or dirk." (*People* v. *Forrest*, *supra*, 67 Cal.2d at p. 481.) Appellant essentially argues, consistent with this quote, he was merely introducing evidence regarding the actual and innocent use of the knife. He reads too much into this quote.

This statement was made during the court's discussion of the *design* of weapons and, in particular, knives. (*People* v. *Forrest*, *supra*, 67 Cal.2d at p. 481.) This discussion focused entirely on the physical characteristics of the weapon and found them to be determinative. The actual use of the weapon simply did not enter into the court's analysis. Therefore, this argument must fail as well.

Our position finds additional support from the following language taken from *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]: "This court has stated that the purpose of the Legislature in enacting section 12020 was to outlaw the possession of 'weapons common to the criminal's arsenal. . . .' [Citation.] This purpose proceeds from the recognition that persons who possess the specialized instruments of violence listed in the section are ordinarily persons who intend to use them in violent and dangerous enterprises. Thus, rather than simply proscribing the *use* of such instruments, the Legislature has sought to prevent such use by proscribing their mere *possession*. In order to insure the intended prophylactic effect, the intent or propensity for violence of the possessor has been rendered irrelevant." (6 Cal.3d at pp. 41-42.) Thus, it is not the *use* of the weapon being proscribed by statute, but its *possession*.

For the first time in his reply brief, appellant contends the shortness of the sharpened blade and the fact that it was sharpened on only one side "could be circumstances 'limiting the effectiveness of its use as a stabbing instrument.' " While this may be, the fact remains the jury found otherwise. Appellant has not challenged the sufficiency of the evidence to support the jury's determination. Nor has he claimed that the knife is not a dirk or dagger as a matter of law.

Finally, it is worth mention that the use notes accompanying CALJIC No. 12.42 indicate it is to be used when "the questioned object is an innocent-appearing utensil capable of use as a dangerous object." We believe an innocent-appearing utensil and a knife fitted or designed primarily for stabbing are mutually exclusive items. We simply cannot conceive of a knife that is primarily designed for stabbing yet innocent in appearance.

Having found no merit to appellant's claim, we need not decide his related claim of prejudice.

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 1995. Kennard, J., was of the opinion that the petition should be granted.