[No. A072760. First Dist., Div. Three. July 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL MOWATT, Defendant and Appellant.

[No. A074721. First Dist., Div. Three. July 22, 1997.]

In re SAMUEL MOWATT on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2. and 3.

## COUNSEL

Richard J. Krech, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Christina V. Kuo, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

PARRILLI, J.—A jury convicted Samuel Mowatt of exhibiting a deadly weapon, a misdemeanor, and carrying a concealed dirk or dagger, a felony. The felony conviction was Mowatt's third strike; the jury also found he had served a prior prison term. The trial court sentenced Mowatt to 26 years to life in prison and ordered him to pay a $10,000 restitution fine. On appeal, Mowatt contends the hunting knife he was charged with carrying was not a "dirk or dagger" under the applicable statutory definition. We agree. As a matter of law, an ordinary hunting knife is not "a knife or other instrument . . . primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death," as provided by Penal Code section 12020, subdivision (c)(24)[1] in 1994 and 1995.

Because we reverse Mowatt's felony conviction, we need not reach his claims involving three strikes issues and the restitution fine. Our disposition also moots his claim of ineffective assistance of counsel on the "dirk or dagger" issue, which he raises both on appeal and in a habeas corpus petition, which we consolidated with the appeal. In the unpublished portion of our opinion, we find no merit in Mowatt's appellate claims of instructional error on reasonable doubt and the insanity defense.

---

[1] Further statutory references are to the Penal Code.

## BACKGROUND

Around 7:30 p.m. on the evening of December 8, 1994, Mowatt entered a bar in the town of Lucerne, in Lake County, and ordered a drink. There was one other customer in the bar, William Mathis, a retiree in his sixties. Mowatt, who was in his late 40's, thought Mathis was staring at him in a threatening manner. Mowatt felt uncomfortable "because I was the only Indian in a Caucasian bar." He asked Mathis several times if he had a problem. Mathis said he did not and asked Mowatt if he had a problem. Mathis testified he did not speak in anger to Mowatt. Eventually, Mathis went to the restroom. Mowatt followed him, and in the restroom Mathis saw Mowatt take a knife from his jacket and put it in his back pocket.

Mathis returned to the bar and told the owner Mowatt had a knife. Mowatt came back and again asked Mathis if he had a problem. Mathis said no. Mowatt pulled out the knife and began waving it at Mathis, saying "come on." Mathis described the knife as "a little hunting knife." (When the knife was introduced into evidence, the trial court described it as "typical of what one would call a hunting knife," a little over eight and a quarter inches long altogether, with a straight four-and-a-quarter-inch fixed blade sharpened on one side, serrations along a portion of the unsharpened side, and a small guard to prevent the fingers from slipping off the handle.) Mathis picked up a bar stool and approached Mowatt, jabbing at him with the legs of the stool. Mowatt backed out of the bar, and went across the street to a store to buy some beer. There, he was arrested by an officer responding to a "911" call from the bar owner's wife.

Defense counsel objected when the prosecutor offered the knife into evidence. He asked the court to find the knife was not a "dirk or dagger" as a matter of law. The prosecutor argued "the legislature has defined what a . . . dirk or dagger is, and that includes a knife designed for stabbing and designed so that it can inflict great bodily injury or death. And I think, as the Court observes this knife, it obviously fits that definition . . . ." Defense counsel responded by referring to the case law on dirks and daggers, and essentially conceding the status of the knife was a question of fact for the jury.[2] The court, after carefully examining the knife, concluded it was for the jury to decide whether it was a dirk or dagger "under the definition, the technical definition, as defined by case law . . . ."

---

[2]The record indicates defense counsel did not read the applicable definition provided by section 12020, subdivision (c)(24) until after the defense rested. Counsel began his closing argument by admitting to "overlooking the obvious," then reading the jury the statutory definition of "dirk or dagger." Counsel later suggested that either he or the prosecutor should have introduced evidence regarding the uses for which the knife was designed. In argument before the court on the relevance of the manufacturer's intent, counsel admitted he had read the statutory definition "somewhat belatedly."

## DISCUSSION

### 1. *A Hunting Knife Was Not a "Dirk or Dagger" in 1994*

It is a felony for anyone to "carr[y] concealed upon his or her person any dirk or dagger." (§ 12020, subd. (a).) Until 1994, case law provided the definition of "dirk or dagger" in prosecutions under section 12020. First stated in *People* v. *Ruiz* (1928) 88 Cal.App. 502 [263 P. 836], the following broad and flexible formulation was quoted and applied in numerous opinions. "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)" (*Id.* at p. 504; see, e.g., *People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374]; *People* v. *Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; *People* v. *Villagren* (1980) 106 Cal.App.3d 720, 725 [165 Cal.Rptr. 470]; *People* v. *Pettway* (1991) 233 Cal.App.3d 1067, 1069-1070 [285 Cal.Rptr. 147].)

Application of this judicially derived definition was sometimes inconsistent. (See, e.g., *People* v. *Barrios* (1992) 7 Cal.App.4th 501, 504-505 [8 Cal.Rptr.2d 666] [discussing conflict between First and Second Appellate Districts on whether attendant circumstances of possession, particularly defendant's intent, were relevant to "dirk or dagger" finding and agreeing with First Appellate District that they were not]; *People* v. *Pettway, supra,* 233 Cal.App.3d at pp. 1070-1071 [disagreeing with *In re Conrad V.* (1986) 176 Cal.App.3d 775, 778 [222 Cal.Rptr. 552], regarding status of very similar unorthodox stabbing weapons with short blades designed to protrude between fingers]; CALJIC No. 12.41 (5th ed. 1988) and Use Note, pp. 66-67 [providing alternate definitions based on divergent case law].) Courts of Appeal, noting the confusion in the cases, suggested the Legislature might clarify the situation. (*People* v. *Pettway, supra,* 233 Cal.App.3d at p. 1070, fn. 1 [urging Legislature "to abandon, or at least define, the arcane term 'dirk or dagger' "]; *People* v. *Wharton* (1992) 5 Cal.App.4th 72, 77, fn. 3 [6 Cal.Rptr.2d 673] ["It is hoped the Legislature will examine these problem areas and produce a clear definition of a dagger and dirk"].)

In 1993 the Legislature enacted the definition governing Mowatt's case: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great

bodily injury or death." (§ 12020, subd. (c)(24), as enacted by Stats. 1993, ch. 357, § 1.) It is immediately apparent that the 1993 Legislature chose a considerably more restrictive definition than the courts did. Instead of including "any straight knife . . . capable of inflicting death," which *"may* consist of any weapon fitted primarily for stabbing" (*People* v. *Ruiz, supra,* 88 Cal.App. at p. 504, italics added), the Legislature decided a "dirk or dagger" must be *primarily designed* as a stabbing weapon, meant to kill or to grievously wound a victim.

 It has long been recognized that section 12020, subdivision (a) proscribes some weapons that are inherently dangerous, and some that are not designed for use as weapons but can be used to wound or kill.[3] "The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose. [Fn. and citation omitted]." (*People* v. *Grubb* (1965) 63 Cal.2d 614, 620-621 [47 Cal.Rptr. 772, 408 P.2d 100] (*Grubb*) [weapon " 'of the *kind* commonly known as a billy' " included shortened baseball bat carried in car, but would not apply to Little Leaguer at bat]; cf. *People* v. *Barrios, supra,* 7 Cal.App.4th at pp. 504-506 [distinguishing *Grubb*, and holding that "dirk or dagger" refers to stabbing instruments without regard to circumstances of use].)

The definition provided by the 1993 Legislature clearly designates dirks and daggers as "classic instruments of violence and their homemade equivalents," in the terms used by the *Grubb* court. While the case law definition was broad enough to include ordinary knives with stabbing capability, the

---

[3]Section 12020, subdivision (a) provides: "Any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any short-barreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag, or who carries concealed upon his or her person any explosive substance, other than fixed ammunition, or who carries concealed upon his or her person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or in the state prison. A bullet containing or carrying an explosive agent is not a destructive device as that term is used in Section 12301."

Legislature's formulation tracked the technical definition of dirks and daggers as stabbing weapons distinct from knives, which are cutting tools that may also be used as weapons.[4] "In pure usage the dagger, always a weapon, should have a symmetrical tapering blade with two, three, or even four edges and a sharp point. It is primarily designed for thrusting or stabbing. The knife, sometimes a weapon, sometimes a tool, should have a single edge for each blade, though the back can be sharpened for a short distance near the point. It is designed primarily for cutting but can also be used for thrusting. The dirk is a variant of the knife. In its original form it was a weapon with an evenly tapered blade sharpened on one edge. In the late 18th and early 19th centuries, however, the name was applied to all the short side arms carried by naval officers. Thus, it included true daggers and sharply curved knives almost of cutlass length." (Peterson, American Knives: The First History and Collectors' Guide (1958) p. 2; cited in *People* v. *Forrest, supra,* 67 Cal.2d at p. 481, and quoted in *People* v. *Wharton, supra,* 5 Cal.App.4th at p. 78.)

 The 1995 Legislature reconsidered the "dirk or dagger" question and substituted a much looser definition, encompassing both inherently dangerous stabbing weapons and instruments intended for harmless uses but also capable of inflicting serious harm: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 12020, subd. (c)(24), as amended by Stats. 1995, ch. 128, § 2.) The hunting knife wielded by Mowatt would qualify as a "dirk or dagger" under the amended version of section 12020, subdivision (c)(24), or

---

[4]The 1993 Legislature's definition is also consistent with "the long-held distinction between weapons that are inherently deadly or dangerous and those that are deadly or dangerous based only on the facts of the particular occasion in question." (*People* v. *Simons* (1996) 42 Cal.App.4th 1100, 1106 [50 Cal.Rptr.2d 351].) In cases involving statutes referring to "deadly weapons," courts have noted: " 'There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the first class, such as guns, *dirks* and blackjacks, which are weapons in the strict sense of the word and are "dangerous or deadly" to others in the ordinary use for which they are designed, may be said as a matter of law to be "dangerous or deadly weapons." . . . The instrumentalities falling into the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and *other sharp or heavy objects, which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed,* may not be said as a matter of law to be "dangerous or deadly weapons." ' " (*People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153], quoting *People* v. *Raleigh* (1932) 128 Cal.App. 105, 108-109 [16 P.2d 752], italics added [both cases involving robbery while "armed with a dangerous or deadly weapon" under former section 211a]; see also, e.g., *People* v. *Brookins* (1989) 215 Cal.App.3d 1297, 1305 [264 Cal.Rptr. 240] [robbery involving use of "deadly weapon" under enhancement statutes]; *People* v. *Simons, supra,* 42 Cal.App.4th at pp. 1106-1107 [resisting arrest by exhibiting "deadly weapon" under section 417.8].)

under the former case law definition (see *People* v. *Villagren, supra,* 106 Cal.App.3d at pp. 726-727 ["hunting knife" much like Mowatt's was properly deemed "dirk or dagger" by jury]).

However, Mowatt was prosecuted under the 1994 statute, which only prohibited him from carrying a concealed "knife or other instrument . . . primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death." We are bound to apply the law as it was enacted by the Legislature, regardless of our opinion of its wisdom (or syntax). ■ "No matter how lethal the instrument may be we cannot hold its concealed possession is a crime unless the Legislature has so provided. . . . '[W]e cannot create an offense that the Legislature failed to create. We must assume that the Legislature meant the section to be read as it was written, however unwise we may think the Legislature was in not creating an offense that we may think should have been created. We cannot create such an offense by enlarging the statute, or by inserting or deleting words, nor should we do so by giving a false meaning to its words. . . .' " (*People* v. *Forrest, supra,* 67 Cal.2d at pp. 481-482, quoting from dissent in *People* v. *Hallner* (1954) 43 Cal.2d 715, 723 [277 P.2d 393]; see also *People* v. *Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675]; *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].)

■ Our Supreme Court has ruled that the Legislature intended the term "dirk or dagger" in section 12020 to be strictly construed. (*People* v. *Bain, supra,* 5 Cal.3d at p. 850.) No published cases have considered the definition in effect in 1994 and 1995. We think it is beyond dispute that a hunting knife like Mowatt's is primarily designed for use as a cutting implement in various recreational activities, not as a stabbing weapon meant to inflict great bodily injury or death (though it is certainly capable of such use).[5] It is common knowledge that such knives are readily available from sporting goods retailers and are routinely possessed by many law-abiding citizens. The relevant statutory definition simply does not include instruments primarily designed for lawful uses but subject to criminal misuse.[6]

The Attorney General argues a hunting knife is designed to cut flesh and therefore fits the statutory description of a "dirk or dagger." We might agree

---

[5]We have obtained the knife from the trial court and examined it.

[6]Under the broader case law definition, a variety of implements were deemed not to be dirks or daggers as a matter of law. (See, e.g., *People* v. *Forrest, supra,* 67 Cal.2d at p. 481 [large folding knife with blade that could not be locked open was not "dirk or dagger" due to its limited stabbing capability]; *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 862 [150 Cal.Rptr. 582] ["strict construction and common sense mandate that an unaltered pair of barber scissors is not a 'dirk or dagger' "]; *People* v. *La Grande* (1979) 98 Cal.App.3d 871, 873 [159 Cal.Rptr. 709] ["an unaltered awl is not a dirk or a dagger as a matter of law"]; *People* v. *Barrios, supra,* 7 Cal.App.4th at p. 506 [bread knife with flexible, rounded blade serrated on one side was not "dirk or dagger" as a matter of law]. Cf. *People* v. *Bain, supra,* 5 Cal.3d at pp. 851-852 [whether folding knife with handguards and locking blade was "dirk

if the Legislature had intended to protect the fish and game populations of California when it enacted section 12020, but that was clearly not the legislative purpose. "The Legislature obviously sought to condemn weapons common to the criminal's arsenal; it meant as well 'to outlaw instruments which are ordinarily used for criminal and unlawful purposes.' [Citations.] The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in section 12020." (*Grubb, supra,* 63 Cal.2d at p. 620.)

The Attorney General further contends the knife's status as a "dirk or dagger" was established by Mowatt's attempted use of the knife as a weapon. However, the trial court properly instructed the jury it was not to consider Mowatt's intent in possessing the knife when it determined whether he had violated section 12020. The statutory definition focused solely on the design of a dirk or dagger, without implicating the possessor's intent. Section 12020, subdivision (a) proscribes the possession of a concealed dirk or dagger, not its use. The rationale of the cases holding the possessor's intent irrelevant in prosecutions for carrying a concealed "dirk or dagger" as defined by case law applies with greater force in prosecutions governed by the 1994-1995 statute, which treats dirks and daggers as inherently dangerous weapons regardless of the circumstances in which they are carried. (See *People v. Barrios, supra,* 7 Cal.App.4th at pp. 504-506 [prosecution may not rely on defendant's intended use of knife]; *People v. Gonzales* (1995) 32 Cal.App.4th 229, 234-235 [38 Cal.Rptr.2d 52] [defendant may not raise innocent intended use as defense].)[7]

---

or dagger" presented "close question of fact"]; *People v. Wharton, supra,* 5 Cal.App.4th at pp. 76, 78 [whether knife with rigid, pointed, three-and-one-half-inch blade sharpened on both sides was "dirk or dagger" was question of fact for jury].)

[7]We note the current version of section 12020, subdivision (c)(24), which turns on whether a knife or other instrument "is capable of ready use as a stabbing weapon," casts the issue of intent in a different light. A persuasive argument could be made that by shifting from the design of the weapon to its capability for dangerous use, the Legislature opened the door for both the prosecution and the defense to introduce evidence of intended use when the implement at issue has innocent uses but may be considered dangerous under the circumstances of its possession. (See *Grubb, supra,* 63 Cal.2d at pp. 621-622, and fn. 9; *In re Jasper* (1973) 30 Cal.App.3d 985, 988-989 [106 Cal.Rptr. 754].) In *People v. Graham, supra,* a prosecution for robbery while " 'armed with a dangerous or deadly weapon,' " the court held that when "the defendant employs an instrumentality which in the strict sense of the word does not constitute a dangerous or deadly weapon," the jury must determine "whether the perpetrator intended to use it as a weapon." (71 Cal.2d at pp. 328-329.)

Significantly, cases holding the defendant's intent irrelevant under the case law definition focus on that part of the definition referring to a "weapon fitted primarily for stabbing," rather than the part referring to a knife "capable of inflicting death." (*Bills v. Superior Court, supra,* 86 Cal.App.3d at p. 860; *People v. Barrios, supra,* 7 Cal.App.4th at p. 503; *People v. Gonzales, supra,* 32 Cal.App.4th at p. 235.)

Mowatt's conviction under section 12020 must be reversed, because his hunting knife was not a "dirk or dagger" as defined by the statute at the time of his alleged offense.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Mowatt's conviction for carrying a concealed dirk or dagger is reversed. The judgment is otherwise affirmed, and the matter is remanded to the trial court for resentencing. The habeas corpus petition is denied.

Corrigan, Acting P. J., and Walker, J., concurred.

---

*See footnote, *ante*, page 713.