[No. B107281. Second Dist., Div. One. Sept. 30, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKEY SAM SISNEROS, Defendant and Appellant.

## Counsel

John L. Holmes for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Kent J. Bullard, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

ORTEGA, J.—We are called upon to determine whether the instrument possessed by defendant was a dirk or dagger. The current version of the statute proscribes only instruments "capable of ready use as a stabbing weapon." (Pen. Code, § 12020, subd. (c)(24).)[1] We conclude the device, which requires some degree of assembly to be used as a knife, was not so "capable," and reverse the conviction.[2]

### Background

Police stopped defendant, who was riding his bicycle after dark. The officers meant to write him a ticket for inadequate lighting on the bicycle. One of the officers noticed a knife in a sheath hanging from defendant's belt. This knife is not the subject of this appeal. An ensuing patdown search revealed a cylindrical device approximately four and one-half inches long and one-half inch in diameter. Unscrewing the end of the device exposes a blade, which can then be turned around and screwed onto the cylinder resulting in a knife approximately six and three-fourths inches long, including a blade slightly over two and one-half inches long. The jury found defendant guilty of violating section 12020, subdivision (a), which makes it a crime to carry a dirk or dagger concealed on the person.

---

[1] All further section references are to the Penal Code.
[2] In light of our resolution of this issue, we do not reach defendant's other claims of error.

## DISCUSSION

The question of what constitutes a dirk or dagger has bedeviled courts for decades. Various objects ranging from ice picks (*In re Robert L.* (1980) 112 Cal.App.3d 401, 404-405 [169 Cal.Rptr. 354]) to steak knives (*In re Quintus W.* (1981) 120 Cal.App.3d 640, 643-645 [175 Cal.Rptr. 30]) to a metal wire wrapped in a shoelace (*People* v. *Cabral* (1975) 51 Cal.App.3d 707, 711-712 [124 Cal.Rptr. 418]), have been found to be dirks or daggers. Various other objects such as barber scissors (*Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 859-862 [150 Cal.Rptr. 582]) and awls (*People* v. *La Grande* (1979) 98 Cal.App.3d 871, 872-873 [159 Cal.Rptr. 709]), have been found not to constitute such a weapon.

We need not burden this opinion with the reasoning behind dissimilar points of view on the topic. There exists a plethora of cases on the subject. (See, e.g., *People* v. *Mowatt* (1997) 56 Cal.App.4th 713 [65 Cal.Rptr.2d 722].) We shall set forth only a brief history of the statute and delve only into the question of whether the statute, as it now exists following a 1995 amendment, proscribes possession of the unique object involved here. We have examined the device in detail, assembling and disassembling it numerous times.

Before a 1993 amendment which first gave a statutory definition of the instrument, the following case law definition was generally accepted: " 'A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a "pocket knife." Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing.' [Citations.]" (*People* v. *Pettway* (1991) 233 Cal.App.3d 1067, 1069-1070 [285 Cal.Rptr. 147], fn. omitted.) Under this definition, the instrument defendant was carrying was a dirk or dagger.

In 1993, the Legislature responded to calls for clarification from the appellate courts and enacted the following definition: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death." (§ 12020, subd. (c)(24), as enacted by Stats. 1993, ch. 357, § 1.)

"It is immediately apparent that the 1993 Legislature chose a considerably more restrictive definition than the courts did. Instead of including 'any straight knife . . . capable of inflicting death,' which '*may* consist of any

weapon fitted primarily for stabbing' [citation], the Legislature decided a 'dirk or dagger' must be *primarily designed* as a stabbing weapon, meant to kill or to grievously wound a victim." (*People* v. *Mowatt, supra,* 56 Cal.App.4th at p. 718.) The appellate court reversed Mowatt's conviction, finding a hunting knife, which would have qualified as a dirk or dagger under the previous case law and under the subsequent 1995 amendment discussed below, did not so qualify under the 1993 legislation.

■ The device carried by defendant Sisneros would have been considered a dirk or dagger under the 1993 legislative definition. But defendant was caught with the device in January 1996, after a new legislative definition took effect. In 1995, the Legislature amended section 12020 to define the weapon thusly: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is *capable of ready use* as a stabbing weapon that may inflict great bodily injury or death." (§ 12020, subd. (c)(24), italics added.)

Is a device that must be unscrewed a full five revolutions to expose the blade, then screwed five revolutions to attach the blade to the handle, capable of ready use as a stabbing weapon? We think not. The most deft of individuals will require several seconds to convert the gizmo from a benign cylinder into an instrument of death. For the entire period of time necessary for assembly, the device is useless as a stabbing weapon. The blade cannot realistically be used unless it is attached to the handle. Otherwise, one is left with a "handle" of only an inch and a quarter, and a blade that is more likely to inflict damage to the wielder's hand than anything else. Were we to consider this device capable of ready use, we would be left to wonder what kind of knife, concealed on the person, is not so capable.

The current version of the statute, by its requirement of ready capability, means to exclude certain devices from its proscription. We conclude that the "capable of ready use" requirement excludes from the definition of dirk or dagger a device carried in a configuration that requires assembly before it can be utilized as a weapon. Had defendant been arrested but a few days earlier, and thus subject to the 1993 legislation, he would have been culpable, for the device is clearly designed primarily as a stabbing weapon. But, carried as a cylinder, it is not "capable of ready use," as required by the 1995 legislation.[3]

---

[3]*People* v. *Mowatt, supra,* 56 Cal.App.4th at page 721 noted that the relevant 1993 definition, at issue in *Mowatt,* focused on the object's design. The 1993 definition thus followed cases interpreting the earlier statute finding the possessor's intent in carrying the weapon irrelevant. In dictum, *Mowatt* suggested that the current definition, which we construe

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter a judgment of acquittal.

Spencer, P. J., and Dunn, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 17, 1997.

---

here, "which turns on whether a knife or other instrument 'is capable of ready use as a stabbing weapon,' casts the issue of intent in a different light. A persuasive argument could be made that by shifting from the design of the weapon to its capability for dangerous use, the Legislature opened the door for both the prosecution and the defense to introduce evidence of intended use when the implement at issue has innocent uses but may be considered dangerous under the circumstances of its possession. [Citation.]" (*Id.* at p. 721, fn. 7.) Because of the facts before us, we will not get into the question of whether intent is ordinarily relevant under the 1995 amendment, with reference to other scenarios or other devices. We find intent irrelevant here.

*Judge of the Municipal Court for the Long beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.