[No. B120937. Second Dist., Div. Seven. Dec. 30, 1998.]

In re GEORGE W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GEORGE W., Defendant and Appellant.

## COUNSEL

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and M. Susan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—This case arises from a probation search of appellant's, George W.'s, home conducted by Pasadena police officers as a routine sweep of gang-related probationers. He appeals from a juvenile court order of wardship (Welf. & Inst. Code, § 602) based on a finding he carried a concealed dirk or dagger on his person in violation of Penal Code section 12020, subdivision (a).[1] The juvenile court ordered camp community placement subject to previously imposed terms and conditions of probation.

Appellant contends the probation search was arbitrary and constituted a form of harassment. Therefore he argues the court erred in failing to grant his motion to suppress evidence of a folding knife and other contraband recovered during the search. In the alternative, he argues the evidence was

---

[1]All further statutory references are to the Penal Code.

insufficient to establish the knife recovered in the search was a "dirk or dagger" within the meaning of section 12020, subdivision (c)(24). Finally, appellant claims the juvenile court abused its discretion in ordering camp community placement rather than continuing him on probation.

We need not address each of appellant's contentions because we conclude the record evidence does not establish the knife at issue in this case fell within the statutory definition of "dirk or dagger." Accordingly, we reverse.

### FACTS AND PROCEEDINGS BELOW

On a quarterly basis the probation department furnished the Pasadena Police Department with a list of gang-affiliated probationers who had search conditions. Police officers who specialized in gang-related matters would conduct searches of the probationers' homes in a coordinated effort covering a few days.

In this instance the probation department supplied a list of 40 gang-affiliated probationers. Appellant's name was on the list. He had been placed on probation on April 8, 1997, after he was adjudged a ward of the court for carrying a concealed firearm. As part of his probation the court had imposed a search and seizure condition. This search condition permitted a search by any law enforcement officer, at any time, with or without a warrant.

On January 14, 1998, at approximately 7:30 p.m. Pasadena Police Officer Edward Armstrong and three other uniformed officers went to appellant's house to conduct a probation search. The officers knocked on the door and announced their intention to conduct a probation search. Appellant's younger sibling answered the door and let the officers into the house. Appellant was asleep on the couch in the living room. Officer Armstrong did a patdown search of appellant and found a folding knife in his right front pants pocket. The officer asked to search appellant's bedroom. According to Officer Armstrong, appellant directed them to a bedroom in which the officers discovered a pair of brass knuckles, a bullet and a partially smoked marijuana cigarette.

Appellant testified at the suppression hearing. He denied the contraband items found in the bedroom were his. He claimed he usually slept in the living room. Appellant explained the bedroom was used by his younger brothers and sister, as well as by his father when his father visited. The trial court denied appellant's motion to suppress the evidence found in the probation search.

The officer described the folding knife found in appellant's pants pocket at the adjudication portion of the hearing. It was a black "Gerber" knife. It

had a steel blade with a single-honed edge. The blade was three and a half to four inches long. The blade locked into place when opened. To fold the knife closed one had to push a release lever to permit the blade to retract into the handle.

Defense counsel argued appellant's intended use of the knife was relevant to the determination whether it met the definition of "dirk or dagger." In response, the court questioned what possible use the knife might have if not "to threaten or stab someone?" Through an offer of proof defense counsel explained appellant used the knife in his work at the Pasadena Civic Auditorium to open boxes and cut plastic bands which secured groups of chairs.

The court examined the knife and expressed the opinion the knife was "a deadly-looking knife just on its appearance to the average lay person." The court concluded the knife was intended to stab someone, was a "dirk or dagger" within the meaning of the law, and sustained the count of the petition alleging appellant carried a concealed "dirk or dagger" on his person. The court dismissed the other counts of the petition relating to the other contraband found in the bedroom of appellant's home.

The court continued appellant as a ward of the court and committed him to camp community placement for a maximum period of five years and four months.

DISCUSSION

*Thee Record Contains Inadequate Evidence to Support a Finding the Knife Appellant Carried Concealed on His Person Fit Within the Applicable Statutory Definition of "Dirk or Dagger."*

 Section 12020, subdivision (a) makes carrying a "dirk or dagger" concealed on one's person a felony/misdemeanor, punishable in county jail for not more than one year or in state prison.

The statute did not define "dirk or dagger" for decades. Until 1994 case law supplied the definition of "dirk or dagger" in prosecutions under section 12020. (*People v. Mowatt* (1997) 56 Cal.App.4th 713, 717 [65 Cal.Rptr.2d 722].) Courts relied on dictionary definitions (*People v. Forrest* (1967) 67 Cal.2d 478 [62 Cal.Rptr. 766, 432 P.2d 374]) or historical information (*People v. Wharton* (1992) 5 Cal.App.4th 72, 78 [6 Cal.Rptr.2d 673]) to determine whether a given instrument could be fairly said to constitute a "dirk or dagger." Courts recognized dirks or daggers were originally used in

dueling and thus were designed primarily for stabbing. (*People* v. *Forrest, supra*, 67 Cal.2d at p. 480.) Based on this rationale courts generally looked for characteristics such as handguards or whether the blade locked into place in determining whether the primary purpose and design of the weapon was for stabbing.

The appellate court in *People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836] devised a broad definition of "dirk or dagger" which was later adopted by several other courts. This definition provided: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)"

Without a precise definition the issue whether a given knife or stabbing instrument was a "dirk or dagger" was generally resolved as a factual matter. (*People* v. *Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; *People* v. *Grubb* (1965) 63 Cal.2d 614, 620-621 [47 Cal.Rptr. 772, 408 P.2d 100].) This often resulted in inconsistent results on similar facts. (See discussions in *People* v. *Mowatt, supra*, 56 Cal.App.4th at p. 717; *People* v. *Sisneros* (1997) 57 Cal.App.4th 1454, 1456 [67 Cal.Rptr.2d 782]; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Public Peace and Welfare, § 1093, p. 1259 et seq.)

After much prompting by appellate courts, in 1993 the Legislature enacted a definition of "dirk or dagger" to mean "a knife or other instrument with or without a handguard that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death." (§ 12020, subd. (c)(24), as enacted by Stats. 1993, ch. 357, § 1.) This definition was held to exclude the types of hunting and folding knives designed primarily for use in various outdoor recreational activities. (See *People* v. *Mowatt, supra*, 56 Cal.App.4th 713 [hunting knife not designed primarily as a stabbing device is not a "dirk or dagger"].)

In 1995 the Legislature reconsidered the question of what constituted a "dirk or dagger." This time the Legislature adopted a much broader and looser definition which included not only inherently dangerous stabbing weapons but also instruments intended for harmless uses but capable of inflicting serious injury or death. This definition provided: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that

may inflict great bodily injury or death." (§ 12020, subd. (c)(24), as amended by Stats. 1995, ch. 128, § 2.)

In 1996 Assembly member Diane Martinez, the author of the 1995 legislation, wrote a letter published in the Assembly Journal expressing concerns over the unanticipated broad reach of the definition of "dirk or dagger" to include folding knives and pocketknives.

Her letter states in pertinent part: "In sponsoring AB 1222 [the 1995 legislation], the California District Attorneys Association sought to eliminate the 'primarily designed' language which had given rise to prosecutorial problems and to substitute language aimed at preventing surprise knife attacks by prohibiting the carrying of concealed knives that are particularly suited for stabbing and that are readily accessible to the user.

"According to a police training video prepared by the Orange County District Attorney who drafted the 'capable of ready use' language contained in the current statute, folding knives are not 'dirk or daggers,' unless they are carried in an open and locked position. This is due to the fact that, when folded, they are not 'capable of ready use' without a number of intervening machinations that give the intended victim time to anticipate and/or prevent an attack.

"Thus, the definition of 'dirk or dagger' amended by my AB 1222 last year was not intended to prohibit folding knives. I believe this is consistent with the intent of the Legislature." (Assem. J., Sept. 1, 1996, p. 9163.)

In the 1997-1998 session Assembly member Granlund introduced Assembly Bill No. 78 to enact the intended statutory definition of "dirk and dagger" as well as to alleviate the concerns of hunting knife manufacturers and sports persons alike. The purpose of this bill was to amend section 12020 to expressly exclude from the definition of "dirk or dagger" folding knives and pocket knives, which are not switchblades, and which are carried in a closed, secured state. Under the proposed amendment folding knives and pocket knives could only fit the definition of "dirk or dagger," that is, of "being capable of ready use as a stabbing weapon that may inflict great bodily injury or death," if "the blade of the knife is exposed and locked into position."

A report to the Assembly Committee on Public Safety (1997-1998 Reg. Sess.) dated April 8, 1997, explained the motive for the proposed amendment of Assembly Bill No. 78. This report inquired "When are Knives Dirk

or Daggers?" and explained "Last year, Assembly Member Martinez wrote a letter in the Assembly Journal clarified [*sic*] the meaning of AB 1222, which revised the definition of a 'dirk or dagger.' The prior definition was created by AB 1266 (Martinez), Chapter 357, Statutes of 1993. Both bills were designed to create a statutory definition rather than having conflicting case law.

"The letter in the Journal indicates that a folding knife is 'a dirk or dagger' for purposes of Penal Code Section 12020 only if the blade of such knife is exposed and locked into position.

"b) AB 78. This bill <u>attempts</u> to codify the letter in the Journal without touching switchblade knife regulation or otherwise doing major damage to the law. The author is doing this at the request of Buck Knives."

The reports to the Assembly Public Safety Committee and Senate Rules Committee (Analysis of Assem. Bill No. 78 (1997-1998 Reg. Sess.) as amended June 17, 1997) explain the proposed amendment "[e]xcludes from the definition of 'dirk or dagger,' a non-locking folding knife, a folding knife that is not a switchblade knife having a blade two or more inches in length, or a pocketknife capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed into position."

The Legislature adopted the proposed amendment and effective January 1, 1998, the statutory definition of "dirk or dagger" was amended to read: "As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A nonlocking folding knife, a folding knife that is not prohibited by Section 653k [switchblade], or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position." (Stats. 1997, ch. 158, § 1.)

This amended version of section 12020, subdivision (c)(24) is the definition of "dirk or dagger" which controls the present case. No reported decision has yet had occasion to apply this amended definition to a given state of facts. Nevertheless, we believe its terms are to be literally applied and "strictly construed." (*People* v. *Bain, supra,* 5 Cal.3d 839, 850 ["As is the usual practice in interpreting criminal statutes, the term 'dirk or dagger' is to be strictly construed."].)

It is undisputed appellant was asleep on the living room couch when the police officers entered to conduct the probation search. It is also undisputed

during a patdown search police officers found a folding knife with a blade capable of locking into position in appellant's front pants pocket. However, there is no evidence in the record demonstrating or tending to suggest the blade of the folding knife in appellant's pocket was exposed and locked into position—as opposed to being closed and retracted into its handle.

As a result the record evidence is insufficient to establish appellant carried the concealed folding knife in such a way as to satisfy the controlling statutory definition of "dirk or dagger"—namely that the folding knife have its blade exposed and locked into position. Accordingly, the true finding on the petition of a violation of section 12020, subdivision (a) must be reversed for insufficient evidence.

## DISPOSITION

The judgment is reversed.

Lillie, P. J., and Neal, J., concurred.