Filed 5/26/21  P. v. Truschke CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C090715 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F2203) |
| v. | |
| JAMES EDWARD TRUSCHKE, JR., | |
| Defendant and Appellant. | |

Defendant, James Edward Truschke, Jr., appeals his conviction for carrying a concealed dirk or dagger (Pen. Code, § 21310)[1] contending:  (1) there was insufficient evidence the knife qualified as a dirk or a dagger; (2) the conviction violated equal protection because a person who possesses a dirk or dagger is similarly situated to one who possesses a pocketknife or openly carries a knife; (3) the conviction violates the

---

[1] Undesignated statutory references are to the Penal Code.

1

Second Amendment; (4) the trial court erred in permitting the officer to express an opinion as to defendant's guilt and testify as to a legal conclusion; (5) the five 1-year prior prison term enhancements should be stricken under Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136); and (6) the prior strike enhancement must be stricken, because the record does not demonstrate he knowing and intelligently waived his right to trial on the prior convictions. The conviction is affirmed. We agree, however, that the prior prison term and prior strike enhancements must be stricken and remand the matter for further proceedings.

## FACTUAL BACKGROUND

Officer Darren Hull, of the Redding Police Department, responded to a report of loitering in a vacant parking lot and contacted defendant. Defendant was wearing heavy clothing, including a jacket zipped to the top. While Hull was on the radio, defendant started to unzip his jacket and appeared to be reaching inside. Hull told him to stop and walked around defendant. The jacket was partially open, and Hull could see a metal handle of what appeared to be a knife. The rest of the knife was concealed under defendant's jacket. Hull removed the knife from defendant. The knife was in a sheath that was secured to defendant's torso, around his ribcage by a strap. The upper half of the sheath rested at about the midcenter of defendant's chest and pointed downward toward the left of his torso. The knife was a fixed blade, survival-type knife, approximately 10 inches from the tip of the blade to the end of the handle. The blade was approximately the same length as the handle. There were no moving mechanisms or hinges. It appeared to be a working knife with a sharp tip and edge. The sheath had a strap that would ordinarily secure the knife in the sheath, but the strap was very torn and weathered and it was not secured when Hull contacted defendant.

Based on his training and experience, Hull opined the knife could be used, without modification, as a stabbing weapon and if so used, would cause significant injury. Hull

2

also believed the knife could have been easily drawn from the sheath. Defense counsel did not object to this testimony.[2]

Defendant told Hull he had just found the knife and wanted to give it to the officer, because he knew he was not supposed to have it.

PROCEDURAL HISTORY

Defendant was charged by information with carrying a concealed dirk or dagger (§ 21310). The information further alleged defendant had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and had served six prior prison terms (§ 667.5, subd. (b).) A jury found defendant guilty, and, in bifurcated proceedings, defendant admitted the prior conviction allegations. Subsequently, one of the convictions that served as the basis for one of the prior prison term enhancements was reduced to a misdemeanor and stricken.

The trial court sentenced defendant to a term of seven years eight months; consisting of the lower term of 16 months, doubled pursuant to the prior strike, plus five 1-year terms for the prior prison term enhancements.

DISCUSSION

I

*Substantial Evidence*

Defendant contends there is not substantial evidence to support his conviction for carrying a concealed dirk or dagger. Specifically, he contends there is not sufficient evidence that the knife qualified as a dirk or dagger because it was in a sheath and

---

[2] Prior to testifying as to his opinion based on his training and experience, defendant objected to Hull's opinion based on a lack of foundation. The court sustained the objection. The prosecution laid a foundation as to Hull's experience and training regarding knives, weapons, defensive tactics, and wounds inflicted by knives, and re-asked the question seeking Hull's opinion. Defense counsel again objected based on a lack of foundation. The trial court overruled the objection. Defense counsel offered no further objections to Hull's opinions.

secured to his person, thus he would have had to use an "intervening mechanism" to use the knife.

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 21310 generally prohibits carrying a concealed "dirk or dagger," "but provides exceptions for (1) a knife placed in a sheath and visibly suspended from the waist and (2) a nonswitchblade folding or pocketknife if the blade is not exposed and locked." (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1371 (*Mitchell*).) The term "dirk or dagger" is defined as "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 16470.) "[T]he prohibition against carrying a concealed dirk or dagger is designed to give third parties the opportunity to protect themselves from the risk of a surprise attack by a person carrying a weapon. [Citation.] The openly displayed sheathed knife exception does not detract from the statutory purpose because the bearer's possession of the knife is visible. Similarly, the folding or pocketknife exception is consistent with the statute's objective because folded knives are not capable of ready use 'without a number of intervening machinations that give the intended victim time to anticipate and/or prevent an attack.' [Citation.]" (*Mitchell,* at pp. 1371-1372.)

Defendant contends his sheathed knife falls within this exception because it was not readily accessible and capable of use as a stabbing instrument. To support this claim,

4

defendant relies on *People v. Sisneros* (1997) 57 Cal.App.4th 1454 (*Sisneros*) and *In re Luke W.* (2001) 88 Cal.App.4th 650 (*Luke W.*). (AOB 19-21) He contends that his knife is no different than the knives in *Sisneros* or *Luke W.* We disagree.

*Sisneros* and *Luke W.* both involved a unique object that could be turned into a weapon only through a series of precise movements to expose and attach a separate blade. (*Sisneros, supra*, 57 Cal.App.4th at p. 1457; *Luke W., supra*, 88 Cal.App.4th at p. 655.) The device at issue in S*isneros* was a cylinder which, had to be unscrewed a full five revolutions to reveal the blade and then screwed back five revolutions to attach the blade to the handle. (*Sisneros,* at pp. 1455, 1457.) Because it required assembly before it could be used as a knife, the "gizmo" was not capable of ready use as a stabbing weapon. (*Id*. at p. 1457.) In *Luke W.*, the device was designed to look like a credit card and function like a "Swiss Army pocketknife," housing a variety of tools. (*Luke W.,* at p. 655.) To access the knife, a person had to use both hands, one hand to hold the device and the thumb and forefinger of the other hand to pull on specific ridged circles to release the knife. (*Id.* at p. 654.) The object fell within the pocketknife exception to the statutory definition of a dirk or dagger, as it could easily fit in a pocket of any article of clothing, the knife blade could not be easily extracted from its slot without manual manipulation using both hands, and the object was not a switchblade. (*Id.* at pp. 656-657.)

Unlike the objects in *Sisneros* and *Luke W*, defendant's knife required no manipulation to be turned into a weapon. Defendant's knife was a survival-type knife that was 10 inches long, with a fixed blade approximately five inches long, and a sharp tip and edge that could inflict serious injury. The knife was neither a "gizmo" or novelty item that required assembly or several intervening manipulations to be capable of use as a stabbing weapon. (Compare *Sisneros, supra*, 57 Cal.App.4th at p. 1457; *Luke W., supra*, 88 Cal.App.4th at p. 656.) The only movement required was to remove it from its sheath. The only impediment to using the knife as a stabbing weapon might have been the strap securing the knife in place, but that strap was worn and not attached when defendant was

5

stopped. The sheath protected defendant from injury while the knife was strapped to his torso, but it did not prevent him from readily using the knife as a dangerous stabbing weapon. Accordingly, the knife falls within the statutory definition of a dirk or dagger.

## II

### *Equal Protection*

Defendant contends that if his sheathed knife fits the statutory definition of a dirk or dagger, then his conviction under section 21310 violates the equal protection clauses of the state and federal Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) Recognizing that this claim is forfeited based on counsel's failure to object in the trial court, defendant also claims the failure to object was ineffective assistance of counsel.

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice . . . . When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328, italics omitted.) "If the two groups are not similarly situated or are not being treated differently, then there can be no equal protection violation. However, if these threshold requirements are met, a court must next ascertain whether the Legislature has a

6

constitutionally sufficient reason to treat the groups differently. [Citation.] Unless the groups are defined by word or effect as members of a 'suspect class' (such as race, national origin, gender, or illegitimacy, to name a few) or the law affects a fundamental right, a law will be upheld as long as there is any ' " 'rational relationship between the disparity of treatment and some legitimate governmental purpose,' " ' even if the rational basis for that law was never articulated by—or even relied on by—the Legislature." (*People v. Castel* (2017) 12 Cal.App.5th 1321, 1326-1327.)

Defendant contends that people who carry sheathed knives are similarly situated to people who carry pocketknives for purposes of applying a law that punishes the concealment of knives that are readily accessible. He reasons that just as the blade of a pocketknife cannot be easily extracted because of its "snug fit," a sheath makes a knife difficult to extract. Defendant further contends there is no compelling reason or rational basis for distinguishing between these two types of knives because a sheathed knife is just as difficult to extract as a pocketknife and both provide third parties with time to prepare for a confrontation. We are not persuaded.

Section 21310 proscribes the concealed carrying of a knife to protect people who come in contact with the knife carrier. The prohibition is designed to prevent surprise attacks, which can occur when a concealed knife is capable of ready use as a dangerous weapon. (*Mitchell, supra*, 209 Cal.App.4th at p. 1371.) Thus, the law targets weapons that are not just easy to access but easy to use on unsuspecting third parties. For purposes of this law, people who carry pocketknives are not similarly situated to people who conceal sheathed knives on their person. The time required to retrieve a closed pocketknife from inside one's clothing and then open its blade and lock it into place reduces the element of surprise, giving third parties the opportunity to protect themselves. By contrast, a knife that is sheathed will often be much easier to locate and the dexterity required to pull the knife from its sheath is materially different from the process of opening a blade from a pocketknife and locking it into place.

7

Moreover, because pocketknives are different from sheathed knives both in terms of appearance and utility, there is a rational basis for treating them differently. Under section 16470, for a pocketknife to be capable of ready use as a dangerous stabbing weapon, the blade must be open and locked into place. A knife with a fixed blade will always be open and locked into place, whether or not it is sheathed. In this sense, a sheath is like a handguard, which offers protection to the knife user without impeding its ready use as a dangerous weapon, and the Legislature has concluded that a knife with a fixed open blade qualifies as a dirk or dagger whether or not it is equipped with a handguard. (§ 21310.)

These flaws in defendant's equal protection theory preclude him from carrying his burden of proving ineffective assistance of counsel. "Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.) Because people who conceal sheathed knives on their person are not similarly situated to people who carry pocketknives and because there is a rational basis for different treatment of these two distinct groups, defendant's trial counsel could have concluded reasonably that objecting to his conviction on equal protection grounds would have been futile.

III

*Second Amendment*

Defendant contends that if his knife fits the statutory definition of a dirk or dagger then section 21310 violates the Second Amendment of the federal Constitution because its restriction on his right to bear arms in self-defense is not narrowly tailored to a legitimate government objective. Again, this claim was forfeited because it was not raised below. Thus, we turn to defendant's fallback position that the failure to make a Second Amendment challenge constituted ineffective assistance of counsel.

Defendant argues that competent defense counsel would have argued that his conviction violates the Second Amendment under the reasoning of *Mitchell, supra*,

8

209 Cal.App.4th 1364.  In *Mitchell*, the court rejected defendant's claim that former section 12020, the predecessor to section 21310, violated the Second Amendment. Relying on authority rejecting Second Amendment challenges to statutes restricting the carrying of concealed firearms, the *Mitchell* court found that former section 12020 was "narrowly tailored to serve the important governmental interest of preventing exposure to the risk of surprise attacks and [did] not burden the right to bear arms in self-defense beyond what [was] reasonably necessary to serve that interest." (*Mitchell,* at p. 1375-1376.)  In reaching this conclusion, the court reasoned as follows:  "[A]n instrument qualifies as a dirk or dagger only if it is a knife or other instrument capable of ready use as a stabbing weapon that may inflict great bodily injury or death; hence, the statute is narrowly restricted to concealed stabbing instruments that pose a serious threat to physical safety.  Further, the statute does not apply to the open carrying of a dirk or dagger, and it excludes from its coverage an openly suspended sheathed knife, as well as nonswitchblade folding and pocketknives kept in a closed or unlocked position.  Thus, the statute provides other means of carrying a dirk or dagger for self-defense." (*Id.* at p. 1375.)

Defendant contends that *Mitchell* establishes that a restriction on the right to carry a knife for self-defense can be justified under the Second Amendment only if it is "capable of ready use," whereas he was convicted of possessing a weapon that was not capable of ready use because it was sheathed.  As explained above, we reject the factual premise of this claim; the trial evidence did not compel the jury to find that defendant's sheath prevented him from easily accessing and readily using his knife as a dangerous stabbing weapon.  Furthermore, section 21030 provides means of carrying a dirk or dagger for self-defense that do not pose the same serious threats to physical safety as a concealed stabbing instrument like the one removed from defendant's body.

9

In short, with *Mitchell* as the governing authority, defense counsel's failure to make a Second Amendment challenge in this case was not ineffective assistance of counsel. (See *People v. Price, supra*, 1 Cal.4th at p. 387.)

IV

*Admission of Officer Hull's Opinion Testimony*

Defendant contends the trial court erred in admitting Hull's testimony that the knife was readily capable of use as a stabbing device. Again recognizing counsel did not object to the testimony on this basis, defendant also contends counsel was ineffective in failing to object.

To preserve a claim that a trial court erroneously admitted evidence, a defendant must make a clear, specific, and timely objection at trial. (Evid. Code, § 353.) The failure to do so forfeits the claim on appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 434 [a defendant's failure " ' "to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable' " on appeal].) Accordingly, defendant's claim that the trial court erred is forfeited.

Turning to the claim that the failure to object was ineffective assistance of counsel, as above, to establish ineffective assistance of counsel, defendant must show that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) A " 'reasonable probability' " is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin, supra*, 18 Cal.4th at p. 333.) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112 [178 L.Ed.2d 624].) Surmounting *Strickland*'s high bar is thus never an easy task. (*Harrington,* at p. 105 [*Strickland*'s high bar must be applied with scrupulous care since

10

ineffective assistance claims can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial].)

"Whether to object to arguably inadmissible evidence is a tactical decision . . . ." (*People v. Maury* (2003) 30 Cal.4th 342, 415.) "[B]ecause trial counsel's tactical decisions are accorded substantial deference, failure to object seldom establishes counsel's incompetence." (*Id*. at pp. 415-416.) Nevertheless, we need not decide whether counsel had a reasonable tactical basis for omitting an objection because we conclude defendant has not shown the requisite prejudice necessary to support his ineffective assistance of counsel claim. (*Strickland, supra*, 466 U.S. at p. 697.)

There is not a reasonable probability that, but for the admission of Hull's testimony that the knife was readily capable of being used as a stabbing weapon, the result would have been different. First, defendant had ample opportunity to cross-examine Hull, dispelling any possible prejudice. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 84.) Moreover, the knife and the sheath themselves were admitted in evidence and shown to the jury. The knife was approximately 10 inches long, with a five-inch fixed blade, sharp tip and edge. The sheath had a strap that would ordinarily secure the knife and perhaps make it less readily accessible, but that strap was worn out and not secured. The jury saw pictures of how defendant had the knife attached to his body and the sheath in which it was contained, including the worn out, unsecured strap. In addition, Hull testified as to the character of the knife, how defendant was carrying it, and the extent to which the knife was concealed. On this record, defendant has not met his burden of establishing prejudice.

V

*Prior Prison Term Enhancements*

Defendant contends, and the People agree, that recently enacted Senate Bill 136 that limits the prior offenses that qualify for a prior prison term enhancement under section 667.5, subdivision (b), applies retroactively to his case. We agree.

11

On October 8, 2019, the Governor signed Senate Bill 136 (2019-2020 Reg. Sess.) that amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). This bill narrowed the eligibility for the one-year prison prior enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined. The statute as amended now provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code, provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended." (§ 667.5, subd. (b).)

We agree with the parties that Senate Bill 136's amendment should be applied retroactively in this case. Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307 [noting "the role of a court is to determine the intent of the Legislature"].) Ordinarily, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) Where the Legislature has reduced punishment for criminal conduct, an inference arises under *In re Estrada* (1965) 63 Cal.2d 740 " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Lara,* at p. 308.) Conversely, the *Estrada* rule " 'is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion

12

of an express saving clause or its equivalent.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 185, italics omitted.)

Here, Senate Bill 136 narrowed who was eligible for a section 667.5, subdivision (b) prison prior enhancement, thus rendering ineligible many individuals, including defendant, whose prior prison history no longer includes a qualifying offense. There is nothing in the bill or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals whose sentences are not yet final. Under these circumstances, we conclude *Estrada*'s inference of retroactive application applies. (See, e.g., *People v. Nasalga* (1996) 12 Cal.4th 784, 797-798 [applying *In re Estrada, supra*, 63 Cal.2d 740 inference of retroactivity to legislative changes to § 12022.6, subds. (a) & (b) enhancements].) Defendant's judgment was not final when the statute took effect, thus entitling him to its benefits. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305-306 [defendant entitled to retroactive application of criminal statute that takes effect during the time defendant has to appeal to the Supreme Court].) Accordingly, we will modify the judgment to strike defendant's prior prison term enhancements. Because the trial court imposed the lower term at sentencing, it is appropriate to remand this matter for resentencing to allow the trial court to revisit its sentencing choices in light of the changed circumstances. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 [remanding for resentencing following striking of enhancements in light of Senate Bill 136]; *People v. Francis* (2017) 16 Cal.App.5th 876, 887 [remand unnecessary where court could not alter sentence to compensate for the loss of enhancements].)

VI

*Prior Strike Enhancement*

Defendant contends his prior strike enhancement should be stricken because the record does not affirmatively show he knowingly and intelligently waived his right to a trial on the truth of the priors.

*Additional Relevant Background*

On the same day defendant was served with the arrest warrant, he was also provided with, and signed, a written advisement of rights. The advisement included the right to a jury trial, the right to cross-examine witnesses, and the right against self-incrimination. Although the referenced charging document charged defendant with carrying a concealed dirk or dagger, a prior strike conviction, and six prior prison term enhancements, the form did not advise defendant these rights also applied to the prior strike conviction.

In the pretrial hearing on the motions in limine, held before defendant indicated he would admit the prior strike conviction, the court and the parties discussed a number of possible issues surrounding the implications of whether defendant chose to testify or not, including possible impeachment with prior convictions and admonitions to the jury about not drawing negative inferences if he did not choose to testify. At this pretrial hearing, defense counsel indicated defendant would admit the prior strike conviction and prior prison terms. The trial court advised defendant if the jury found him guilty, by admitting the priors, he would be giving up his right to a trial. Defendant indicated he understood and was giving up that right. Defendant was not further advised of his right to cross-examination or against self-incrimination specifically relative to the prior strike conviction. Defense counsel concurred in the waiver. Defendant admitted he had sustained a prior robbery conviction and admitted serving six prior prison terms.

*Analysis*

When accepting a defendant's admission of prior convictions, the trial court must advise the defendant of his or her " 'right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his [or her] plea.' " (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 57, quoting *In re Tahl* (1969) 1 Cal.3d 122, 132; *In re Yurko* (1974) 10 Cal.3d 857, 863.) For a waiver of these constitutional rights to be valid, it must be knowing, intelligent, and voluntary. (*Boykin*

14

*v. Alabama* (1969) 395 U.S. 238, 241-244 [23 L.Ed.2d 274].)  The lack of express advisement, and waiver, of each of the *Boykin-Tahl* rights constitutes reversible error unless "the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances."  (*People v. Howard* (1992) 1 Cal.4th 1132, 1175; *People v. Mosby* (2004) 33 Cal.4th 353, 360.)  The focus of the analysis is not "whether the defendant received express rights advisements, and expressly waived them, [but] whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived."  (*Mosby,* at p. 361.)  The reviewing court must go beyond the record of the plea colloquy and review the entire record.  (*Ibid*.)  Moreover, " 'a defendant's prior experience with the criminal justice system' is . . . 'relevant to the question [of] whether he [or she] knowingly waived constitutional rights.' [Citation.]  That is so because previous experience in the criminal justice system is relevant to a recidivist's ' "knowledge and sophistication regarding his [or her] [legal] rights." ' [Citations.]"  (*Id*. at p. 365, fn. omitted.)

We review the totality of the circumstances whether the trial court failed, "either partially or completely, to advise and take waivers of the defendant's trial rights before accepting a guilty plea."  (*People v. Farwell* (2018) 5 Cal.5th 295, 303.)  We examine the record to determine if the record "affirmatively shows" that the defendant's waiver of constitutional rights was voluntary and intelligent.  (*People v. Howard, supra*, 1 Cal.4th at p. 1179.)

Here, before taking his admission on the prior convictions, the trial court advised defendant only of his right to a jury trial.  The record does not affirmatively demonstrate defendant had an understanding of the rights he was waiving as to the prior strike conviction.  Defendant had received a written advisement of his rights, including his right to confront witnesses, and against self-incrimination; however, nothing in that advisement indicates those rights also apply to the prior strike conviction.  Defense counsel concurred in the waiver, but the record does not indicate counsel had spoken with

15

defendant about his rights and their applicability to his prior strike conviction. Defendant waived his rights prior to exercising his rights in the jury trial on the substantive offenses. (See *People v. Cross* (2015) 61 Cal.4th 164, 180.) Defendant has had significant prior experience in the criminal justice system. However, nothing in the record indicates how those cases were resolved or whether defendant was properly advised of his rights as to prior convictions or availed himself of those rights in those prior cases. "Given the lack of information regarding appellant's prior convictions . . . and the lack of other facts demonstrating an awareness and comprehension of his constitutional rights, we cannot infer that appellant's prior experience in the criminal justice system demonstrated his present knowledge and understanding of his rights." (*People v. Christian* (2005) 125 Cal.App.4th 688, 697-698; see *People v. Daniels* (2017) 3 Cal.5th 961, 1001 (conc. & dis. opn. of Cuéllar, J.) That is, "[t]he court did not ask whether [defendant] had discussed the [admission] with his lawyer; nor did it ask any questions of [defendant] personally or in any way inform him of his right to a fair determination of the prior conviction allegation. [Citation.] The [admission] occurred [prior to defendant exercising his trial rights]. [Citation.] Further, we have no information on how the alleged prior conviction was obtained. [Citation.]" (*Cross* at p. 180.) Moreover, there was no discussion of the penal consequences of the admission. "[N]othing in the record affirmatively shows that [defendant] was aware of his right to a fair determination of the truth of the prior conviction allegation." (*Ibid*.) On this record, we conclude defendant's prior strike conviction enhancement must be stricken.

## DISPOSITION

The prior prison term and prior strike conviction enhancements are stricken.  The remaining conviction is affirmed.  The matter is remanded to the trial court for possible retrial of the prior strike conviction enhancement and resentencing consistent with this opinion.

/s/ _____
HOCH, J.

We concur:


/s/ _____
BLEASE, Acting P. J.


/s/ _____
KRAUSE, J.